Leon R. THOMAS, Petitioner,

v.

Herbert NEWKIRK, Defendant.

No. 3:95cv578AS.

United States District Court,
N.D. Indiana,
South Bend Division.

Nov. 13, 1995.

Leon R. Thomas, Westville, IN, pro se.

Robert D. Bugher, Indiana Department of Correction, Indianapolis, IN, for respondents.

### MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

## I. INTRODUCTION

Interests of life, liberty, and property are protected by Amendment XIV to the United States Constitution. A person may not be deprived of those interests without due process of law. U.S. Const.Amendment XIV. Petitioner Leon R. Thomas ("Thomas") is an inmate at the Indiana State Prison. On November 1, 1993 an offender by the name of Jones, # 852411 was stabbed by another inmate. Petitioner Thomas was accused of stabbing Jones. The Conduct Adjustment Board ("CAB"), No. ISP–93–12112 met on December 20, 1993 and found that Thomas stabbed Jones. Thomas was sentenced to three years disciplinary segregation.[1] Thomas exhausted his administrative appeal pursuant to *Markham v. Clark*, 978 F.2d 993 (7th Cir.1992). Thomas then brought the present action under 28 U.S.C. § 2254 alleging he has a liberty interest (i.e. a constitu-

tional right) to stay in the general prison population and that the CAB decision placing him in disciplinary segregation failed to comport with due process. Respondent replies there is no liberty interest in avoiding disciplinary segregation under *Sandin v. Conner*, — U.S. ——, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), and therefore the mandates of *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) and its' progeny and progenitors are inapplicable.

## II. ISSUE

Whether Thomas has a liberty interest in remaining out of disciplinary segregation? If so, whether the prison provided him sufficient due process prior to his placement in disciplinary segregation?

## III. DISCUSSION

■ This court is unconvinced that the sole answer to the claims in this petition is simply an incantation of *Sandin*. Therefore, this court treats Respondent's Return to Order to Show Cause as a Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Ignoring for the moment the *Sandin* argument presented by Respondent, this court finds no merit in some of the issues raised here. This court has no trouble dismissing the petition insofar as it raises the alleged right of Thomas to confront and cross-examine witnesses because the full-blown application of the Sixth Amendment of the Constitution of the United States clearly does not apply to CAB proceedings. Nor is this court convinced that there is any merit in Thomas' claim that he had insufficient time to prepare for his hearing. Therefore, those two claims are **DISMISSED.**

■ Thomas also argues that the CAB was required to find that a preponderance of the evidence supporting a finding of guilt. Thomas is wrong. Simply because Indiana chooses to require additional procedure "does

---

1. Chief Judge Posner indicated that "disciplinary segregation", "administrative" and "protective" segregation may be synonymous for purposes of due process analysis. *Smith v. Shettle*, 946 F.2d 1250, 1251 (7th Cir.1991). Because nothing on the record provides any means of distinguishing between the types of segregation, this court tem- porarily treats them as synonymous. In the interests of clarity and to assist the court in resolving the following issues, a detailed description of the conditions and purpose of each type of segregation should be provided to this court in a future brief.

not create an independent substantive right." *Olim v. Wakinekona*, 461 U.S. 238, 250–51, 103 S.Ct. 1741, 1747–48, 75 L.Ed.2d 813 (1983). Whatever the requirements of state law, the Constitution requires only "some evidence." *Superintendent v. Hill*, 472 U.S. 445 at 455, 105 S.Ct. 2768 at 2773–74, 86 L.Ed.2d 356 (1985). Accordingly, there only need be "some evidence" supporting Thomas' CAB conviction. *Henderson v. United States Parole Com'n*, 13 F.3d 1073, 1077 (7th Cir.1994). Thomas's claim that the CAB failed to judge the evidence by a preponderance is without merit and is **DISMISSED.**

As to the remaining claims, this court frankly believes that they may have merit. Perhaps most meritorious is the claim that the CAB failed to sufficiently explain their reasons for their findings of fact. *Whitford v. Boglino*, 63 F.3d 527, 534 (7th Cir.1995). Thomas' CAB did not point to any first-hand witness of the event. If the CAB wished to keep the identify of their informants confidential, then pursuant to *Wells v. Israel*, 854 F.2d 995 (7th Cir.1988) there are procedures to do that. Here, there is no citation to a confidential source, and even if there was, there is no "indicia" of the reliability of this source. Finally, this court is troubled by the fact that the CAB did not appear to have the exculpatory statements of the victim and Edward Smith, an alleged informant before it. Although the CAB is entitled to reject recanted statements, it must have the statement in evidence before it can reject the statement. Respondent's argument is that the foregoing concerns are irrelevant as *Sandin* disposes of the case.

■ However, the Attorney General's *Sandin* argument leaves a great deal to be desired. While some courts seem to think that *Sandin* completely purges due process from all disciplinary segregation proceedings,[2] this court is not yet convinced that *Sandin* was meant to be so broad. In the past, a court looked to the language of a state statute or rule to determine if the state by regulation or statute limited the ability of the prisoner to be placed in segregation. If it did, then the prison had a liberty interest in avoiding the segregation and could not be placed in segregation absent due process. *Hewitt v. Helms*, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983). Rather than abandoning the entire *Hewitt* analysis, it seems that *Sandin* merely refocused the examination to include another factor. Under *Sandin*, "one who suffers a short period of segregation, whether disciplinary or administrative, has not been deprived of a liberty interest unless he can show both that his confinement was contrary to a state law or regulation written in explicitly mandatory language and that it imposed an 'atypical and significant hardship'." *Riggins v. Cooper*, No. 95c1877, 1995 WL 771413, 1995 U.S.Dist. LEXIS 12182, *12. Thus, to establish a liberty interest under *Sandin*, a state must 1.) proscribed by statute or regulation the segregation of the inmate "absent specified substantive predicates", *Hewitt*, 459 U.S. at 471, 103 S.Ct. at 871 and 872 and 2.) the segregation must restrain the prisoner in such a manner that it "imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life". *Sandin*, ——— U.S. at ———, 115 S.Ct. at 2301. A statute alone is insufficient, the segregation must be "atypical" and work a "significant hardship" on the prisoner in comparison to the "ordinary incidents" of prison life.

The *Sandin* court made no explicit finding on the nature of the Hawaiian statute, but such was not necessary as the court found that thirty days in disciplinary segregation was not "atypical" and did not work a "significant hardship" on inmate Conner in relation to the ordinary incidents of Conner's prison life. In reaching that conclusion, the *Sandin* court observed three factors. First, the court noted that the conditions in disciplinary segregation "mirrored those conditions upon inmates in administrative segregation and protective custody". *Id.* Second, the court commented on the duration of the confine-

---

**2.** *Leslie v. Doyle*, 896 F.Supp 771, 774 (N.D.Ill. 1995) (Under *Sandin* wrongful commitment to segregation is an inherent consequence, a sort of assumed risk of being in prison, therefore, there is no liberty interest in avoiding it.); *Holly v. True*, No. 92c1636, 1995 WL 579550, 1995 U.S.Dist. Lexis 14235, (N.D.Ill. Sept. 29, 1995) (*Sandin* rejects a claim that a prisoner has any liberty interest in compliance with prison regulations).

ment. "Conner's confinement did not exceed similar, but totally discretionary confinement in either *duration* or degree of restraint." *Id.* ── U.S. at ──, 115 S.Ct. at 2301, n. 7. (emphasis added). Finally, the *Sandin* court remarked that none of the State's action "will inevitably affect the duration of his sentence."

■ While any liberty interest discussion must consider the implications of the three factors identified above, the duration and conditions of segregation are the most relevant factors. If a court finds that the action of the state "will inevitably affect the duration of the sentence" itself, then it is highly likely that that finding alone is sufficient to create a liberty interest and thus require due process before its deprivation. *Wolff v. McDonnell,* 418 U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (finding liberty interest in good time credits which affect the duration of a prisoner's sentence.) Nevertheless, segregation *per se* does not inevitably affect the duration of the prisoner's sentence. "The chance that a finding of misconduct will alter the balance [in considering parole] is simply to attenuated to invoke the procedural guarantees of the Due Process Clause." *Sandin* ── U.S. at ──, 115 S.Ct. at 2302, (*citing Meachum v. Fano* 427 U.S. 215, 229, n. 8, 96 S.Ct. 2532, 2540, n. 8, 49 L.Ed.2d 451 (1976)).[3]

■ Furthermore, it seems implicit that the conditions and duration of the segregation are considered inversely. In *Sandin,* the length of confinement in disciplinary segregation was for a brief period of time, thirty days. Since Conner's confinement was relatively brief, the conditions of his segregation became less relevant. Similarly, if Conner's duration in segregation was lengthy, but un-

der conditions very similar to the "ordinary incidents" of prison life, it stands to reason that the court would not have found a liberty interest at stake in that situation as well.

However, prior to comparing the conditions and duration of disciplinary segregation, a court must have something to compare them against. Whether something is "atypical" depends on what is "typical" in prison life. What are the "ordinary incidents" of prison life? The *Sandin* court compared Conner's disciplinary segregation to administrative and protective segregation but did not specify if the "ordinary incidents" of prison life also included conditions of the general prison population. Are the "ordinary incidents" based upon the objective expectations of a "reasonable inmate" newly arrived at the prison without a blemish on his prison record? The Court hinted that some objectivity is involved when it suggested that "discipline by prison officials ... falls within the expected parameters of the sentence imposed by a court of law". *Id.* ── U.S. at ──, 115 S.Ct. at 2301. Chief Judge Posner wrote that a prisoner can expect to be confined as closely as the state wants, including solitary confinement, since the prisoner "has no natural liberty to mingle with the general prison population." *Smith,* 946 F.2d at 1254. Objectively, this suggests that an ordinary incident of prison life is that a prisoner can expect to be thrown in disciplinary segregation for the rest of his sentence without any hope of due process. Does this expectation of disciplinary segregation trump a state statute or regulation proscribing segregation absent specified predicates? Judge Shadur in *Leslie, supra* n. 2. seems to think it does and he may be right.[4]

3. *Cf.* Justice Ginsburg's *Sandin* dissent. "[Disciplinary confinement] ... rests on a finding of wrongdoing that can adversely affect an inmate's parole prospects. Disciplinary confinement therefore cannot be bracketed with administrative segregation and protective custody, both measures that carry no long-term consequences." *Sandin,* ── U.S. at ──, 115 S.Ct. at 2302.

4. Judge's Shadur's thorough and probing opinion also seems to suggest the *Sandin* court reasoned as follows. An inmate can reasonably

expect to be thrown in protective or administrative custody at any time without due process. The conditions of protective and administrative segregation are fairly similar to the conditions of disciplinary segregation; therefore, no due process is required before placing an inmate in disciplinary segregation. Even if such analysis is correct, it seems that if the duration of disciplinary segregation is for a long period of time (which protective and administrative segregation tend not to be) there would be cause to invoke the due process clause.

Or are the "ordinary incidents" dependant upon the subjective interpretations of each individual inmate or the institution as a whole? It is clear that Indiana prisons do not confine all of their prisoners in what amounts to the solitary confinement of disciplinary segregation. The vast number of the prisoners in Indiana are allowed to mingle with the general prison population. A subjective view of this situation would certainly lead one to believe that an ordinary incident of prison life is that one is allowed to mingle with the general prison population. Finally, are the "ordinary incidents" supposed to be reflective of the entire Department of Corrections, or do they differ from prison to prison? These and many more questions have yet to be answered by the courts.

Even assuming that the "ordinary incidents" are established, there may be a point where a very small difference between the conditions of confinement provides a peg sufficient to hang a liberty interest upon when the duration of the segregation is quite lengthy. In the past, a long period of segregation was sufficient to create a liberty interest from the due process clause itself regardless of the existence of state law or statute or of the conditions of confinement. *See, e.g. Rowe v. DeBruyn,* 17 F.3d 1047, 1053 (7th Cir.1994) (holding federal due process protections must be followed before a term of one year in segregation may be imposed because such a penalty falls outside the expected scope of an inmate's sentence). While the Court acknowledges that *Rowe* may have been overruled by *Sandin,* the court has not explicitly held so. *Whitford,* 63 F.3d at 533, ("The Sandin Court's observation that punishment for disciplinary violations is within the expected scope of a prison sentence calls Rowe's reasoning into question"). Here, if the predicate statute or regulation exists, segregation of three (3) *years* may not need much more in the way of differing conditions to create a liberty interest in avoiding the segregation.

It would be premature for this court to use *Sandin* to purge due process from the entire gamut of disciplinary segregation cases since the record is insufficiently developed. To be sure, Indiana prison officials are restrained by the Cruel and Unusual Punishment Clause of the Eighth Amendment as to the conditions of the segregation. Whether Thomas entitled to anything under the Constitution prior to being placed in segregation is a thorny question not yet ripe for answering. First, neither Respondent nor Thomas point to any rule or regulation that purports to create the supposed liberty interest. Second, there is no evidence as to the conditions of the various types of segregation or that of the general prison population. While the Respondent may be correct in that *Sandin* is dispositive, the record is simply insufficient at this point to have an incantatory assertion of *Sandin* and dismiss the case.

## IV. CONCLUSION

There may not be a liberty interest in disciplinary segregation of six months or less, *Whitford,* 63 F.3d at 532, but it seems open for debate as to whether segregation for three years presents the type of "atypical, significant deprivation in which a state might conceivably create a liberty interest." Respondent's Motion to Dismiss is hereby **GRANTED** in part and **DENIED** in part.

**IT IS SO ORDERED.**