Norman SWEENEY, Petitioner–
Appellant,

v.

Al C. PARKE, Superintendent, and Pamela Carter, Indiana Attorney General,[1] Respondents–Appellees.

No. 96–1680.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 17, 1997.

Decided May 12, 1997.

1. The only proper respondent in a collateral attack is the petitioner's custodian, *Hogan v. Hanks,* 97 F.3d 189, 190 (7th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1439, 137 L.Ed.2d 546 (1997), which, in this case, is Superintendent Parke. Attorney General Carter is therefore dismissed as a party.

J. Timothy Eaton (argued), Coffield, Ungaretti & Harris, Chicago, IL, for Petitioner–Appellant.

Robert D. Bugher, Indiana Department of Corrections, Legal Services Division, Indianapolis, IN, Jeffrey A. Modisett, Carol A. Nemeth (argued), Office of the Attorney General, Indianapolis, IN, for Al C. Parke.

Jeffrey A. Modisett, Office of the Attorney General, Indianapolis, IN, for Pamela Carter.

Before BAUER, FLAUM, and EVANS, Circuit Judges.

BAUER, Circuit Judge.

Petitioner–Appellant Norman Sweeney currently is incarcerated at Indiana State Prison ("ISP"), which is operated by the Indiana Department of Corrections ("IDOC"). After finding that Sweeney tampered with the lock on his cell door, the Conduct Adjustment Board ("CAB") imposed various sanctions, including the reduction of Sweeney's earned credit time. Sweeney exhausted all administrative remedies. He then filed a petition for a writ of habeas corpus, the denial of which we affirm.

## BACKGROUND

Sweeney's disciplinary hearing, the subject of this appeal, arose from a Report of Conduct issued by Sergeant M.V. Neary. On July 3, 1995, at approximately 2:00 p.m., Sergeant Neary saw a large white blanket lying across the railing and covering half of the upper range of the B cell block at the ISP. As Sergeant Neary climbed the stairs of the B cell block, he saw Sweeney walk into his cell and attempt to close the door without anyone noticing. Sergeant Neary then checked all of the doors in the B cell block and found Sweeney's door unsecured. Sergeant Neary concluded, "Inmate Sweeney was secured in his cell at 11:00 a.m. Thus the only way he (Sweeney) would have been able to get out of his cell would be to tamper with the locking device." The Report of Conduct cited Sweeney with a violation of Adult Disciplinary Policy Procedures Code 226.

On July 5, 1995, Sweeney received a copy of the Report of Conduct and a Notice of Disciplinary Hearing, which informed Sweeney that a CAB proceeding was scheduled for the following day. The Notice of Disciplinary Hearing indicated that Sweeney pleaded "not guilty" to the charges against him, that he requested a lay advocate to assist him at the hearing, and that he did not wish to call any witnesses at the hearing.

Both Sergeant Neary and Sweeney testified at the disciplinary hearing on July 6, 1995. Sweeney denied the allegations in the Report of Conduct to no avail. The CAB found Sweeney guilty of the offense and sanctioned him with loss of privileges for three months, disciplinary segregation for one year, demotion from Credit Class II to Credit Class III, and loss of 180 days of earned credit time or "good-time credit."

Sweeney appealed the CAB's findings and sanctions to ISP Superintendent Parke, claiming that the evidence presented was insufficient to support his conviction. The appeal was denied. Sweeney next appealed to the IDOC's Disciplinary Review Manager of Adult Operations, who, finding no error, also upheld the conviction. Sweeney then turned to the federal courts. He unsuccessfully petitioned the district court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. In his petition, Sweeney claimed that he was deprived of due process at his disciplinary hearing because he was denied access to witnesses and documentary evidence and because the evidence was insufficient to support his conviction. This appeal followed and raises the same issues advanced below.

## ANALYSIS

### Entitlement to Due Process Protection

■ The parties do not dispute that Sweeney's loss of 180 days' good-time credit constitutes a deprivation of a liberty interest protected by the Due Process Clause. "[U]nder Indiana law, state prison inmates have a protected liberty interest in earned good-time credits.... [T]he state may not deprive inmates of good-time credits without following constitutionally adequate procedures to insure that the credits are not arbitrarily rescinded." *Meeks v. McBride*, 81 F.3d 717, 719 (7th Cir.1996) (citing *Wolff v. McDonnell*, 418 U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974)). *Sandin v. Conner*, —— U.S. ——, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the most recent Supreme Court opinion to address the scope of inmates' federal due process protection, does not alter this conclusion. Under *Sandin*, an inmate is entitled to due process protection if "the State's action will inevitably affect the duration of his sentence." *Id.* at ——, 115 S.Ct. at 2302. Such is the case where an Indiana inmate, like Sweeney, loses his good-time credits. *See* Ind.Code § 35–50–6–1(a) (indicating that an inmate's earned credit time shortens his period of incarceration).

### Standard of Review

■ Section 104(3) of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 ("AEDPA"), adds to the existing habeas statute a new § 2254(d), which prescribes the appropriate treatment of legal determinations made by a state court. A writ may not be granted unless the state court's adjudication of the petitioner's claim resulted in a decision that "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2). The AEDPA has altered our analysis of habeas claims in several respects relevant to the present case. First, § 2254(d)(1) directs that we are no longer permitted to apply our own jurisprudence, but must look exclusively to Supreme Court caselaw in reviewing a petitioner's claim. Second, our criterion for assessing the reasonableness of a state court's application of Supreme Court caselaw, pursuant to § 2254(d)(1), is "whether the determination is at least minimally consistent with the facts and circumstances of the case." *Hennon v. Cooper*, 109 F.3d 330, 335 (7th Cir.1997).

In this circuit, § 2254 as amended is applicable to cases, like Sweeney's, that were pending at the time the AEDPA was enact-

ed.[2] *Lindh v. Murphy,* 96 F.3d 856, 861–67 (7th Cir.1996) (en banc), *cert. granted,* —— U.S. ——, 117 S.Ct. 726, 136 L.Ed.2d 643 (1997). We previously have suggested that the amended habeas statute applies to determinations made by administrative bodies. *Evans v. McBride,* 94 F.3d 1062, 1065 (7th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 991, 136 L.Ed.2d 872 (1997). Thus, we proceed on the assumption that the amended § 2254 applies to Sweeney's case.[3]

**Witnesses and Documentary Evidence**

■ Sweeney first claims that his due process rights were violated because he was denied access to his cell block's logbook, which he believes would have alerted him to witnesses who could have rendered exculpatory testimony at his disciplinary hearing. Sweeney hypothesizes that the logbook would have helped him determine whether a locksmith was called to examine the locks in the cell block, whether other inmates' cells were properly secured, whether proper security procedures were followed in the lockdown, and other information, all of which, according to Sweeney, is relevant to the question of whether he tampered with the lock on his cell door. Sweeney also contends that the CAB denied his request to call witnesses to testify in his behalf and that the denial amounted to a deprivation of due process.

■ Generally, a prisoner is entitled to documentary evidence and should be permitted to call witnesses in his behalf at a disciplinary hearing, unless gaining possession of such documentary evidence or calling witnesses would be inconsistent with institutional safety and correctional goals. *Superintendent Mass. Corr. Inst. v. Hill,* 472 U.S. 445, 455, 105 S.Ct. 2768, 2773–74, 86 L.Ed.2d 356 (1985); *Wolff v. McDonnell,* 418 U.S. 539, 566, 94 S.Ct. 2963, 2979–80, 41 L.Ed.2d 935 (1974); *Rasheed–Bey v. Duckworth,* 969 F.2d 357, 361 (7th Cir.1992). Although neither of the parties has identified any specific institu-

tional goal that would have been undermined had the district court provided Sweeney access to the logbook or allowed him to call witnesses, Sweeney was accorded all the process he was due.

First, the record does not reflect that Sweeney requested access to the logbook prior to the hearing or even at the hearing. The CAB could not have improperly denied a request that was never made. The record does indicate, however, that Sweeney requested a continuance of the proceedings, which was denied. Sweeney claims (apparently for the first time in this case) that the continuance would have given him time to review the logbook and determine whom to call as witnesses, and that the denial of his request for a continuance was a violation of his due process rights. In short, Sweeney was given twenty-four hours to plan his defense, and he was not entitled to more. *See Wolff,* 418 U.S. at 564, 94 S.Ct. at 2978–79 (mandating that an inmate must receive written notice of a disciplinary hearing at least twenty-four hours in advance). The CAB's denial of Sweeney's request for a continuance thus did not result in a decision contrary to Supreme Court caselaw, nor was it an unreasonable application of *Wolff.* Under § 2254(d)(1)'s "reasonableness" standard, we give state court judgments more deference than we would under an "erroneous" and perhaps even under a "clearly erroneous" standard. *Hennon,* 109 F.3d at 334–35. This is a demanding standard that Sweeney has not met.

Second, it is unclear when (or even if) Sweeney requested to call witnesses. The Notice of Disciplinary Hearing indicates that Sweeney did not request to have any witnesses at the hearing. The Report of Disciplinary Hearing likewise is silent as to any request by Sweeney to call witnesses. Sweeney claims he requested to call witnesses the day of the hearing; Superintendent Parke

---

2. The district court denied Sweeney's habeas petition on March 4, 1996. On March 14, 1996, Sweeney filed an appeal of the judgment, and the district court granted a Certificate of Probable Cause.

3. Currently before the Supreme Court is the issue of whether the amended habeas statute applies retroactively to cases filed before the AEDPA was passed. Throughout this opinion, we will note, where appropriate, whether Sweeney would have been entitled to habeas relief under the old standard of review.

asserts that Sweeney first alluded to calling witnesses in his habeas petition. Even if we give Sweeney the benefit of the doubt and assume that he did indeed request to call witnesses on the day of the hearing, it was still too late.

■ The right of inmates to call witnesses at disciplinary hearings is not unqualified. The Supreme Court made clear in *Wolff* that an inmate's interest in avoiding the loss of good-time credit does not outweigh the needs of the prison. *See Wolff,* 418 U.S. at 561–63, 566, 94 S.Ct. at 2977–78, 2979–80. The Court emphasized that the judgment of prison administrators should not be put aside hastily. *See id.*[4] It is not unreasonable to interpret *Wolff* as affording inmates the right to call witnesses when their requests to call witnesses are timely. Such an application is "at least minimally consistent with the facts and circumstances of the case." *Hennon,* 109 F.3d at 335 Prison officials need leeway in operating their institutions in an orderly fashion. An inmate's day-of-hearing request to call witnesses may be a delay tactic (especially if the request to call witnesses is accompanied by a request for a continuance); it may raise the level of confrontation between the prison staff and the inmate and thereby undermine prison officials' authority; and it may disrupt the institution's disciplinary process and hinder its rehabilitative function. These risks are inherent in day-of-hearing requests, and prison officials are justified in summarily denying such requests.

In short, the right of inmates to call witnesses is a limited right. In this case, Sweeney's right to call witnesses was limited, but not eviscerated, and, that being the case, his due process rights were not violated. Sweeney had the opportunity to request witnesses when he was notified of the disciplinary hearing, and he chose not to take advantage of that opportunity. Moreover, Sweeney had the chance to request access to the logbook, and it appears from the record that he failed to make such a request. Sweeney received the process he was due with regard to witnesses and documentary evidence, and we therefore reject his claim.[5]

## Sufficiency of the Evidence

■ In order to pass constitutional muster, a decision by a prison disciplinary board to revoke an inmate's good-time credit must be supported by some evidence. *Hill,* 472 U.S. at 455, 105 S.Ct. at 2773–74 (emphasis added). Sweeney acknowledges this standard, but argues that the evidence presented at his disciplinary hearing was "closer to no evidence" than "some evidence."

On appeal, we are not concerned with the point at which the evidence lies on the small continuum between "no evidence" and "some evidence." The relevant question is whether there is *any evidence* in the record that could support the conclusion reached by the disciplinary board, and in answering this question, we are not required to examine the entire record, independently assess the credibility of witnesses, or weigh the evidence.

4. The Court dedicated more than a page of its opinion in *Wolff* to discussing the qualified nature of inmates' right to call witnesses during disciplinary proceedings. *See Wolff,* 418 U.S. at 566–67, 94 S.Ct. at 2979. The following excerpts are illustrative: "Ordinarily, the right to present evidence is basic to a fair hearing; but the unrestricted right to call witnesses from the prison population carries obvious potential for disruption and for interference with the swift punishment that in individual cases may be essential to carrying out the correctional program of the institution." *Id.* at 566, 94 S.Ct. at 2979. "Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence." *Id.* "Many prison officials, on the spot

and with the responsibility for the safety of inmates and staff, are reluctant to extend the unqualified right to call witnesses; and in our view, they must have the necessary discretion without being subject to unduly crippling constitutional impediments." *Id.* at 566–67, 94 S.Ct. at 2980.

5. Even under the more expansive scope of review permitted under pre-AEDPA law, Sweeney would not have been entitled to federal habeas relief. The law of this circuit does not entitle a prisoner to wait until the day of his hearing to request to call witnesses. *Miller v. Duckworth,* 963 F.2d 1002, 1004 n. 2 (7th Cir.1992). Due process requires that a prisoner be given a reasonable time (at least twenty-four hours) to plan his defense, *Rasheed–Bey,* 969 F.2d at 361, which Sweeney was accorded.

*Id.* at 455–56, 105 S.Ct. at 2773–75 (emphasis added).

Sergeant Neary stated in his report and then testified at the disciplinary hearing that on July 3, 1995 at approximately 2:00 p.m, he observed a large white blanket lying across the railing and covering more than half of the upper range of the B cell block; that he walked up the stairs and saw Sweeney walk into his cell and attempt to close the cell door without any guards noticing; that he subsequently found Sweeney's door unsecured; and that Sweeney had previously been secured in his cell at 11:00 a.m. Sergeant Neary's conclusion (which the CAB accepted) that Sweeney tampered with the lock on his cell door was a perfectly reasonable determination of the facts in light of this evidence, and just because Sweeney denied Sergeant Neary's allegations does not mean the CAB's decision to accept Sergeant Neary's account of the facts was contrary to, or involved an unreasonable application of, Supreme Court precedent. "The Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board." *Hill,* 472 U.S. at 457, 105 S.Ct. at 2775.[6]

### CONCLUSION

For the foregoing reasons, the district court's judgment denying Sweeney's petition for a writ of habeas corpus is AFFIRMED.

---

**6.** The pre-AEDPA standard of review would not have helped Sweeney on this issue, as this circuit adheres to the dictates of Hill. *See Meeks,* 81 F.3d at 719–20; *Hamilton v. O'Leary,* 976 F.2d 341, 346 (7th Cir.1992).