**Billy RICE, Petitioner,**

v.

**Daniel R. McBRIDE, Respondent.**

**No. 3:97–CV–0184 AS.**

United States District Court,
N.D. Indiana,
South Bend Division.

June 11, 1997.

Billy Rice, Westville, IN, pro se.

Mary Ann Gregorio, Office of the Attorney General, Indianapolis, IN, for Daniel R. McBride.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

This is a challenge under 28 U.S.C. § 2254 to a prison Conduct Adjustment Board ("CAB") proceeding by *pro se* petitioner Billy Rice ("Rice"). Rice is currently housed at the Westville Correctional Facility ("WCF") in Westville, Indiana. The incident giving rise to the CAB proceeding occurred at the Lakeside Correctional Facility ("LCF"). Rice filed his petition for writ of habeas corpus on March 18, 1997, challenging a conviction in a prison disciplinary proceeding that occurred while he was incarcerated at the LCF, styled by the Indiana Department of Correction as "WCC # 97–01–0393."

## I. FACTS AND PROCEDURAL HISTORY

On January 8, 1997, Investigator Tappy entered a report of conduct and a report of investigation against Rice, charging him with a violation of Adult Disciplinary Policy Procedures ("ADPP") code section 213, "threatening another person with bodily harm." Specifically, the report of investigation reads as follows:

On December 19, 1996, I received information from Captain Buss, Custody Supervisor, at the Lakeside Correctional Facility (LCC) about an offender threatening another person with physical harm. According to Captain Buss, several LCC staff witnessed or overheard offender Billy Rice # 946346 make verbal threats of killing his wife, Sophia Rice, and her live-in boyfriend.

On Thursday, January 2, 1997, I met with Captain Buss to review and assemble all relevant documents known to exist con-

cerning the above matter. The following LCC staff were interviewed concerning Rice's actions.

Officer Byrd contends offender Rice made a statement about getting out of prison and killing his wife and her boyfriend. Officer Byrd said on December 18, 1996, Rice was on the telephone to his wife and after the call, he began to rant and rave about getting his son.

Officer Williams said on December 18, 1996, while working the West–2 dorm, she could see Rice on the telephone and hear him become loud and boisterous towards his wife. Officer Williams contends Rice had been dwelling on problems with his wife and child for weeks.

Officer Neal said on December 19, 1996, offender Rice was talking to him about he (Rice) was having with his wife and their child. Officer Neal said during their conversation Rice said when he gets out, he knew beating up his wife's boyfriend would violate his parole, so he would just take his life.

An officer asking to remain anonymous, states that on December 18, 1996, offender Rice was in West–2 dorm talking on the telephone to his wife. The officer said he/she overheard Rice say, "When I get out, I'm going to come over and get you (Sophia), and your boyfriend. I'm not going to beat you up, I'm going to kill you both. If I violate my parole I might as well do it right." The officer said he/she went to Counselor McEwan with the above information.

Offender Rice said on December 18, 1996, while on the telephone with his wife, he was talking about killing a dog that had bitten his son and was not talking about physically harming his wife or her boyfriend.

*See* Respondent's Return to Order to Show Cause, Ex. 1, Report of Investigation of Incident.

Rice was provided a copy of the report of conduct on January 17, 1997, along with notice of a hearing on the report to be held before the Conduct Adjustment Board ("CAB") on January 21, 1997. In response

to his notice of hearing, Rice pled not guilty, requesting the assistance of a lay advocate. Rice requested that Officer Hope be made available as a witness for the hearing as well.

The hearing on Rice's conduct report occurred on January 23, 1997. During the hearing, Rice made a statement on his own behalf, denying that he made any threats to his wife. The CAB also reviewed the investigator's report and the statements of the witnesses. After reviewing all of the evidence presented, the CAB found the petitioner guilty of the charge of threatening to kill private citizens of society, and provided the petitioner with a written explanation of its findings. The CAB's findings of fact and statement of evidence relied on were issued as follows:

> After reviewing the CR, Investigator's Report, witness statements, and offender comment, we find guilty based on statements by staff. Officers Sanders and Byrd both witness Rice threatening someone over the phone, saying he would kill his wife and her boyfriend. Rice admits being on the phone with his wife. Officer Neal states Rice told him (Neal) that he (Rice) would take his (Rice's) wife's boyfriend's life.

*See* Respondent's Response to Order to Show Cause, Ex. 1, Report of Disciplinary Hearing. As a result of his conviction, the CAB sanctioned Rice by depriving him of 180 days earned credit time and by demoting him from credit time earning class I to credit class II.

Subsequently, on January 28, 1997, Mr. Rice appealed the CAB's decision to the prison superintendent, respondent Daniel McBride. In his appeal, Rice argued that the evidence was insufficient and that the Report of Investigation was incorrectly dated. On February 5, 1997, McBride denied the appeal, finding that there was sufficient evidence to support the CAB's decision. On February 10, 1997, Rice appealed his conviction to the Indiana Department of Correction Adult Disciplinary Review Manager, L. A. VanNatta. In that appeal, Rice presented two grounds for review: (1) that the CAB's decision was based upon insufficient evidence; and, (2) that his due process rights

were violated when he was not provided with a statement by his wife, which was not obtained by Investigator Tappy. On February 25, 1997, Ms. VanNatta denied that appeal, finding that there was no evidence of procedural or due process error in the CAB proceeding.

Rice filed his petition for writ of *habeas corpus* in this court on March 18, 1997. The respondent filed his return to order to show cause and a confidential exhibit under seal on May 20, 1997.

 On June 3, 1997, this court personally opened respondent's confidential exhibit under seal, which was filed with this court on May 20, 1997. After examining said exhibit, the exhibit was resealed. Pursuant to the decision of the United States Court of Appeals for the Seventh Circuit in *Mendoza v. Miller,* 779 F.2d 1287 (7th Cir.1985), this court has the authority to examine confidential documents which are filed under seal and without service.

## II. ARGUMENTS

Rice turned his attentions to federal court by filing his petition for writ of *habeas corpus* in this court on March 18, 1997. In his petition, Rice raises two separate due process claims. First, he claims that the CAB's decision was based upon insufficient evidence. Second, he claims that a statement from his wife should have been obtained but was not. Thus, Rice requests that this court grant his petition for federal habeas relief.

The respondent filed his return to order to show cause on May 20, 1997, demonstrating the necessary compliance with *Lewis v. Faulkner,* 689 F.2d 100 (7th Cir.1982). In his response, the respondent argues that Rice's due process rights were not violated by the CAB in the January 23, 1997 hearing.

## III. STANDARDS OF REVIEW

 A claim under 28 U.S.C. § 2254 requires the federal habeas court to ensure that the state criminal conviction was not achieved at the expense of the petitioner's constitutional rights. Justice Stewart, speaking for the Supreme Court of the United States in *Jackson v. Virginia,* 443 U.S.

307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), described the role of the federal district courts in habeas proceedings:

> A judgment by a state appellate court rejecting a challenge to evidentiary sufficiency is of course entitled to deference by the federal courts, as is any judgment affirming a criminal conviction. But Congress in § 2254 has selected the federal district courts as precisely the forums that are responsible for determining whether state convictions have been secured in accord with federal constitutional law. The federal habeas corpus statute presumes the norm of a fair trial in the state court and adequate state postconviction remedies to redress possible error. What it does not presume is that these state proceedings will always be without error in the constitutional sense. The duty of a federal habeas corpus court to appraise a claim that constitutional error did occur— reflecting as it does the belief that the "finality" of a deprivation of liberty through the invocation of the criminal sanction is simply not to be achieved at the expense of a constitutional right—is not one that can be so lightly abjured.

*Id.* at 323, 99 S.Ct. at 2791 (citation omitted).

The Congress of the United States has recently codified the holdings of *Jackson* and its progeny through the AEDPA, which amended 28 U.S.C. § 2254, in relevant part, as follows:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

*See* 28 U.S.C. § 2254(e)(1).

When Congress passed the AEDPA, the standards of review that the court must apply to the merits of a petition for writ of habeas corpus under § 2254 also changed significantly. Section 2254 was further amended in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in the State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*See* 28 U.S.C. § 2254(d). In *Lindh v. Murphy,* 96 F.3d 856 (7th Cir.1996),[1] the Seventh Circuit, speaking through Circuit Judge Easterbrook, held that § 2254(d), as amended, should be applied to petitions pending when the AEDPA was enacted. The Seventh Circuit found that "[t]he 1996 Act does not 'impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed.'" *Id.* at 867 (quoting *Landgraf v. USI Film Products,* 511 U.S. 244, 280, 114 S.Ct. 1483, 1505, 128 L.Ed.2d 229 (1994)); *see also Burris v. Parke,* 948 F.Supp. 1310, 1319–20 (N.D.Ind. 1996).

In *Sweeney v. Parke,* 113 F.3d 716 (7th Cir.1997), the Seventh Circuit suggested that the amended habeas statute applies to determinations made by administrative bodies. *See also Evans v. McBride,* 94 F.3d 1062, 1065 (7th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 991, 136 L.Ed.2d 872(1997). Thus, following *Evans* and *Sweeney,* this court shall apply the amended standards of the AEDPA on Rice's challenge to his prison disciplinary conviction.

---

1. The court notes that on January 10, 1997, a petition for writ of certiorari was granted in *Lindh* on the issue of the retroactivity of § 2254(d). Subsequently, on April 14, 1997, the Supreme Court of the United States held oral argument on this important issue. However, while the decision of *Lindh* is debated by the Supreme Court of the United States, the rule of law set forth by the Seventh Circuit in *Lindh* is still the law applicable in this circuit and must be applied by this court when reviewing this petition.

## IV. DUE PROCESS CLAIMS

The petitioner raises a variety of due process claims in this petition. The respondent submits that all of Rice's due process claims fail on their merits. Any discussion on alleged violations of due process and the creation of protected liberty interests in the prison disciplinary context must first begin with an analysis of the recent decision by the Supreme Court of the United States in *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). This court has already published several opinions dealing with some of the dimensions of the Supreme Court's important decision in *Sandin: See Bonner v. Parke*, 918 F.Supp. 1264 (N.D.Ind. 1996); *Stone–Bey v. Barnes*, 913 F.Supp. 1226 (N.D.Ind.1996); *McKinney v. Hanks*, 911 F.Supp. 359 (N.D.Ind.1995); *Thomas v. Newkirk*, 905 F.Supp. 580, (N.D.Ind. Nov.13, 1995); *Stone–Bey v. Swihart*, 898 F.Supp. 1287 (N.D.Ind.1995).

In *Sandin,* the Supreme Court held:

> The time has come to return to the due process principles we believe were correctly established and applied in *Wolff* and *Meachum [v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976)]. Following *Wolff,* we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. *But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.*

*Sandin,* 515 U.S. at ——, 115 S.Ct. at 2300 (Citations omitted) (Emphasis added).

 The Court also held in *Sandin* that a liberty interest is present where action of the state will "inevitably affect" the duration of the inmate's sentence. *Id.* at ——–——, 115 S.Ct. at 2301–02. In this case, Rice was sanctioned with a deprivation of 180 days of earned credit time and with a demotion in credit time earning class from a Class I to a Class II. Thus, Rice's loss of earned credit time creates a liberty interest that cannot be deprived without due process. *Id.* Because a liberty interest is present, the court must inquire whether these prison officials have sufficiently afforded Rice the due process protections required under the Due Process Clause in his prison disciplinary proceeding.

 The requirements imposed by the Due Process Clause are flexible and variable dependent upon the particular situation being examined. *See Greenholtz v. Nebraska Penal Inmates,* 442 U.S. 1, 12, 99 S.Ct. 2100, 2106, 60 L.Ed.2d 668 (1979). In determining what is the process due an inmate in the prison context, the Supreme Court of the United States has held that "one cannot automatically apply procedural rules designed for free citizens in an open society ... to the very different situation presented by a disciplinary proceeding in a state prison." *Wolff,* 418 U.S. 539, 560, 94 S.Ct. 2963, 2976, 41 L.Ed.2d 935 (1974). "Prison administrators ... should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish,* 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979). The United States Court of Appeals for the Seventh Circuit has held that the Due Process Clause entitles an inmate to receive:

> (1) advance (at least 24 hours before hearing) notice of the claimed violation; (2) the opportunity to be heard before an impartial decision maker; (3) the opportunity to call witnesses and present documentary evidence (when consistent with institutional safety); and (4) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action.

*Rasheed-Bey v. Duckworth,* 969 F.2d 357, 361 (7th Cir.1992) (citing *Superintendent, Mass. Corr. Institution at Walpole v. Hill,* 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985) and *Wolff v. McDonnell,* 418 U.S. 539, 563–67, 94 S.Ct. 2963, 2978–80, 41 L.Ed.2d 935 (1974)).

First, in this case, the "Notice of Disciplinary Hearing" indicates that Rice received notice on January 17, 1997, that a hearing would be held on January 21, 1997—clearly

more than the required 24 hours notice. Second, Rice did appear at the CAB hearing held on January 23, 1997. Third, the CAB listed the evidence it relied upon in reaching its decision to find Rice guilty of the charged violation. Fourth, Rice was provided the opportunity and, indeed, called one individual as a witness, Officer Hope, who completed a statement on Rice's behalf. Thus, after reviewing the record in light of the standards set forth in *Rasheed–Bey,* it is this court's opinion that Rice received the requisite due process protections in his CAB hearing. Accordingly, having determined that Rice did, in fact, receive the minimum of process due him in the CAB hearing, the court will address his specific grounds for review presented in his petition.

## A. INSUFFICIENT EVIDENCE

The petitioner first argues that his CAB conviction was based upon insufficient evidence. Although the four factors set forth in *Rasheed–Bey, supra,* do not specify the quantum of evidence necessary to support a fact finder's decision, this question was resolved by the Supreme Court of the United States in *Superintendent, Mass. Corr. Institution at Walpole v. Hill, supra.* In *Superintendent,* the Court held that "the requirements of due process are satisfied if *some evidence* supports the decision by the disciplinary board." 472 U.S. at 455, 105 S.Ct. at 2774 (emphasis added). Thus, a district court's review of the CAB proceeding is very narrow. Accordingly, this court need only inquire "whether there is evidence in the record that could support the conclusion reached by the [CAB]." *Id.* at 455–56, 105 S.Ct. at 2774. However, while due process only requires that "some evidence" exists, the evidence that is relied upon by a disciplinary board must present "sufficient indicia of reliability." *Meeks v. McBride,* 81 F.3d 717, 720 (7th Cir.1996). In addition, this court is not to reweigh the evidence presented to the CAB *de novo. See Viens v. Daniels,* 871 F.2d 1328 (7th Cir.1989).

In this case, Investigator Tappy performed an in-depth investigation into the circumstances surrounding the incident which formed the basis of Rice's conviction. During that investigation, Investigator Tappy gathered many statements from witnesses to the incident. In its decision, the CAB relied upon Investigator Tappy's report of conduct and report of investigation. In addition, witness statements were presented and testimony was heard from other witnesses. Further, the CAB also heard Rice's own testimony before a decision was rendered and reviewed the Notice to Witness completed by Officer Hope.

The petitioner argues that the evidence was insufficient because he presented conflicting evidence—the aforementioned witness statement in which Officer Hope stated that he had seen Rice and his wife interacting and that they appeared to be on good terms. However, after reviewing the record in its totality, including the CAB's findings of fact, this court is convinced that the CAB's decision was supported by reliable evidence which clearly amounts to "some evidence" under *Superintendent* and *Meeks.* In a prison disciplinary hearing, an inmate is entitled to exculpatory evidence to ensure "that the trier of fact considers all relevant evidence in reaching a conclusion as to guilt or innocence ... and ... the right of the defendant to prepare the best defense he can bring to the [CAB's] attention and any evidence helpful to the case." *See Chavis v. Rowe,* 643 F.2d 1281, 1286 (7th Cir.), *cert. denied,* 454 U.S. 907, 102 S.Ct. 415, 70 L.Ed.2d 225 (1981).

However, in *Wolff, supra,* the Supreme Court also found that there are countervailing concerns to this rule. In *Young v. Kann,* 926 F.2d 1396 (3d Cir.1991), the United States Court of appeals for the Third Circuit held that a prisoner's right to produce evidence in his or her defense is limited only by the demands of prisoner safety and institutional order, as determined by the sound discretion of the prison authorities.[2] 926 F.2d at 1400 (finding "the risk of death or

---

**2.** While this court is not required to follow the appellate decisions of other circuits blindly, these decisions must be given due respect because the

Seventh Circuit has yet to rule on this issue. *See, Colby v. J.C. Penney Co., Inc.,* 811 F.2d 1119, 1123 (7th Cir.1987).

**1104**

injury to inmate witnesses and informants identified at hearing or in produced documents, as well as the potential for breakdown in authority, order and discipline inside the institution" are grounds for limiting inmate's right to produce evidence). A confidential witness appeared to have provided the investigator with damaging information on Rice's behavior. The identity of this witness remained confidential since the prison allegedly feared for their safety. Thus, after reviewing the record in this case as well as the statement of the confidential witness, it is this court's view that, under the totality of the circumstances, this court must dismiss the petitioner's claim that the evidence presented to the CAB was insufficient.

## B. FAILURE TO OBTAIN WIFE'S STATEMENT

The petitioner also complains that the prison failed to provide him with a copy of a witness statement before the CAB hearing. Specifically, Rice contends that his due process rights were violated when a statement from his wife was not obtained by the CAB or Investigator Tappy. However, the record clearly indicates that Rice did not request a statement from his wife prior to the CAB hearing. The respondent counters by arguing that it was unnecessary to present a statement from Rice's wife because she was not present when Officers Byrd and Neal heard Rice state that he would kill his wife and her boyfriend upon his release and that her statement would have only corroborated the statement of Officer Hope that they were on good terms.

As stated previously in *Superintendent,* the Court held that "the requirements of due process are satisfied if *some evidence* supports the decision by the disciplinary board." 472 U.S. at 455, 105 S.Ct. at 2774 (emphasis added). Again, this court need only inquire "whether there is evidence in the record that could support the conclusion reached by the [CAB]." *Id.* at 455–56, 105 S.Ct. at 2774. Therefore, the failure to present a statement by Rice's wife, which he did not request, does not affect the validity of the decision of the CAB as some evidence was presented to support the decision of the CAB.

## V. CONCLUSION

The court, for the foregoing reasons, holds that Rice's petition pursuant to 28 U.S.C. § 2254 states no claim upon which relief can be granted under the Fourteenth Amendment to the United States Constitution. Therefore, this petition is hereby **DENIED** and this case is now **DISMISSED. IT IS SO ORDER.**