151 F.3d 1033
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Ronnie MOORE, Plaintiff-Appellant,
v.
Richard B. GRAMLEY, et al., Defendants-Appellees.
 No. 96-2503.
 United States Court of Appeals, Seventh Circuit.
 Submitted May 14, 1998*.
Decided May 20, 1998.
 
 Appeal from the United States District Court for the Central District of Illinois. No. 94-C-1561 Michael M. Mihm, Chief Judge.
 Before Hon. JOEL M. FLAUM, Hon. MICHAEL S. KANNE, Hon. TERENCE T. EVANS, Circuit Judges.
 
 ORDER
 
 1
 Ronnie Moore filed suit pursuant to 42 U.S.C. § 1983, alleging that the defendant prison officials[1] denied him due process in his prison disciplinary proceeding and were deliberately indifferent to threats to his safety in violation of the Eighth and Fourteenth Amendments. The district court granted summary judgment in favor of the defendants, having concluded that Moore had received all the process he was due under Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), and that he had failed to demonstrate the requisite deliberate indifference to his safety to establish an Eighth Amendment violation. Moore appeals, challenging the district court's award of summary judgment and the denial of his request for appointment of counsel. We affirm.
 
 
 2
 Moore is currently incarcerated at Menard Correctional Center, but at the time of the incidents underlying this suit, he was incarcerated at Pontiac Correctional Center ("Pontiac") in Pontiac, Illinois. The following facts, which we view in the light most favorable to Moore, gave rise to this suit.
 
 
 3
 Moore was transferred from Stateville Correctional Center to Pontiac after gang members threatened and assaulted him because he owed them money for marijuana purchases. Upon his arrival at Pontiac, he requested placement in protective custody. Moore was initially placed in protective custody, but when an investigation yielded no proof of his need for protective custody, he was moved to the general population.
 
 
 4
 The day he moved, he discovered a threatening note on his bed. Moore told a correctional officer about the note and refused to stay in his cell. The officer then took Moore to the segregation unit, where Moore chose to remain until his transfer to Menard over ten months later in October 1995. Moore subsequently received a disciplinary report charging him with unauthorized movement from his cell and disobeying a direct order to remain in his cell.
 
 
 5
 On December 2, 1994, the prison disciplinary committee conducted a hearing on Moore's disciplinary charges. Moore contested the charges, explaining that he refused to remain in his cell because of the threatening note. Shortly thereafter, the committee found that Moore had committed the offenses charged and imposed fifteen days of segregation and demotion to "C" grade for one month.
 
 
 6
 The day after Moore moved to segregation, Victor Henderson was assigned to share a cell with Moore. This arrangement continued without incident until March 25, 1995, when Moore and Henderson had a fight. Both Moore and Henderson were hospitalized in the prison infirmary as a result. After the altercation, another inmate told Moore that Henderson said that his "brothers" paid him to attack Moore.
 
 
 7
 Moore filed this suit against various prison officials, alleging the violation of his due process and Eighth Amendment rights. The district court granted the defendants' motions for summary judgment, and this appeal followed.
 
 Due Process Claims
 
 8
 On appeal, Moore argues that he was denied due process at his disciplinary hearing. Specifically, he claims that the racial composition of the disciplinary committee was not fair and impartial, that the committee conspired with a correctional officer to confiscate evidence that would exonerate Moore of the disciplinary charges and justify his placement in protective custody, and that the committee denied him the opportunity to call witnesses. Moore has waived his first claim regarding the racial composition of the disciplinary committee because he failed to raise it before the district court.
 
 
 9
 We cannot consider the merits of Moore's second claim regarding the alleged conspiracy because it is premature under Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). See Edwards v. Balisok, 520 U.S. 641, 117 S.Ct. 1584, 1588-89, 137 L.Ed.2d 906 (1997); Stone-Bey v. Barnes, 120 F.3d 718, 719 (7th Cir.1997). Moore's claim that the disciplinary committee conspired with a correctional officer to confiscate exculpatory evidence clearly implies the invalidity of his disciplinary conviction. See Perez v. Sifel, 57 F.3d 503, 505 (7th Cir.1995) (per curiam). Because his disciplinary conviction has not been invalidated, we dismiss this claim without prejudice under Heck.
 
 
 10
 Moore's third claim--that he was denied the opportunity to present witnesses--is likewise not cognizable under Heck because if successful, it would undermine the validity of his disciplinary conviction. However, we have recognized that Heck may not foreclose a due process claim from being "immediately cognizable" under § 1983 where that claim is based on an alleged violation of the due process requirements set forth in Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). See Stone-Bey, 120 F.3d at 722-23 (discussing Justice Ginsburg's concurring opinion in Edwards, 117 S.Ct. at 1589). Assuming that Heck does not foreclose Moore's claim, we agree with the district court that Moore was afforded an adequate opportunity to present witnesses under Wolff. Although Moore argues that he was denied the opportunity to present witnesses, the summary of the disciplinary proceedings indicates that he did not request any witnesses. Moore does not allege that he actually requested witnesses in advance of the hearing, and if he waited until the day of the hearing to request witnesses, the disciplinary committee was justified in summarily denying the request. See Sweeney v. Parke, 113 F.3d 716, 719-20 (7th Cir.1997) (a request to call witnesses on the day of the hearing is too late). Because Moore had the opportunity to request witnesses when he was notified of the disciplinary hearing, his due process rights were not violated.
 
 Eight Amendment Claims
 
 11
 Moore next contends that prison officials violated his Eighth Amendment rights by being deliberately indifferent to risks to his safety. He argues that the prison officials first denied him protective custody, notwithstanding his letters indicating that his life had been threatened by gang members, and second, housed him with an HIV-positive inmate who suffers from a mental illness and has a known history of violence.
 
 
 12
 Prison officials have a duty to protect prisoners from harm by other prisoners. See Farmer v. Brennan, 511 U.S. 825, 831-33, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). To establish a violation of the Eighth Amendment for failure to protect, the inmate must show that he faced "a substantial risk of serious harm," and that the prison official was "deliberately indifferent" to that risk. Id. at 834. By "deliberately indifferent" we mean that the official was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]," and that he drew the inference. Id. at 837.
 
 
 13
 Moore does not present sufficient evidence to raise a question of fact regarding whether the defendants were deliberately indifferent to the gang threats or any threat Henderson posed. Moore contends that he wrote letters to the defendants stating that his life had been threatened by gang members and requesting protective custody, but they denied his requests leaving him vulnerable to the subsequent attack by his cellmate. Moore offers no admissible evidence showing that these letters or anything else put the defendants on notice that Henderson posed a threat to Moore. Moore's letters allege that he was threatened by various individuals and gang members, but Moore never reported any problems with Henderson until after the March 1995 fight. Moore even admitted at his deposition that no one--including himself--knew Henderson was going to attack him. Finally, all of the defendants deny knowing that Henderson posed any danger to Moore prior to the March 1995 incident.
 
 
 14
 Moore attempts to establish a causal connection between the alleged threats by gang members and the fight with Henderson. Moore's only proof of such a connection consists of an affidavit from inmate Daniel Nicklaus, stating that Henderson said that his "brothers" had paid him to attack Moore.[2] Nicklaus's statement, however, is inadmissible hearsay because it is an out-of-court statement "offered ... to prove the truth of the matter asserted." Fed.R.Evid. 801(c). The law is well established that "a party may not rely upon inadmissible hearsay in an affidavit or deposition to oppose a motion for summary judgment." Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir.1996). Therefore, Moore cannot use Nicklaus's affidavit to link the gang threats to Henderson's attack, leaving Moore with no evidence demonstrating that the defendants were aware or should have been aware that Henderson would attack Moore.
 
 
 15
 Finally, Moore contends that the Pontiac officials violated his Eighth Amendment rights by housing him with Henderson because Henderson is HIV-positive, mentally ill, and has a known history of violence. Other than Moore's own self-serving testimony, the record contains no evidence showing that Henderson is HIV-positive. On the contrary, the record contains an affidavit from the Medical Records Director at Stateville, attesting that Henderson's medical file contains no evidence that he is HIV positive. The record likewise does not support Moore's allegation that Henderson is mentally ill. Even assuming that Henderson suffers from a mental illness, Moore has failed to allege (let alone prove) that the mental illness makes Henderson prone to violence.
 
 
 16
 Moore's contention that Henderson has a history of violence fails for lack of evidence. In his deposition, Moore stated that he did not know how many times Henderson had fought before they were housed together; however, Moore said that he knew Henderson had been in altercations before because Henderson said his jaw had been broken. Without more specific evidence regarding the number of altercations Henderson initiated, as opposed to defended, and the extent of any injuries Henderson caused to his cellmates, we cannot conclude that there is a genuine issue of material fact regarding whether the defendants were deliberately indifferent to a substantial risk of serious harm in housing Moore with Henderson.
 
 Denial of Motion for Appointed Counsel
 
 17
 Moore argues that the district court erred in denying his motion for appointment of counsel on the ground that he had not attempted to retain private counsel because he later came forward with evidence satisfying this standard. 28 U.S.C. § 1915(e). We review the denial of a motion for appointment of counsel for abuse of discretion. See Luttrell v. Nickel, 129 F.3d 933, 936 (7th Cir.1997).
 
 
 18
 The question whether an indigent litigant has made reasonable efforts to obtain private counsel is only a threshold inquiry. See Jackson v. County of McLean, 953 F.2d 1070, 1072-73 (7th Cir.1992). Although the district court found that Moore had not satisfied this requirement, the court also concluded that Moore appeared more than capable of presenting his case and neither the legal issues nor the evidence was so complex as to require the expertise of an attorney. The district court did not abuse its discretion because "given the difficulty of the case, the plaintiff appear[ed] to be competent to try it himself...." Zarnes v. Rhodes, 64 F.3d 285, 288 (7th Cir.1995) (citation omitted).
 
 
 19
 For the foregoing reasons, we MODIFY the judgment of the district court to dismiss without prejudice Moore's due process claim regarding the confiscation of exculpatory evidence. We AFFIRM the judgment as modified.
 
 
 
 *
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary in this case; accordingly, the appeal is submitted on the briefs and the record. See Fed. R.App. P. 34(a); Cir. R. 34(f)
 
 
 [1]
 Moore named the following prison officials as defendants: Richard Gramley, former Warden at Pontiac Correctional Center ("Pontiac"); Louis Lowery, Assistant Pontiac Warden; Lieutenant Bennie Harville, Jr., formerly known as Bennie Lambert, a Pontiac correctional officer; Leora Harry, chairperson of the Administrative Review Board of the Illinois Department of Corrections; and Richard Irving, an Internal Affairs Investigator at Pontiac
 
 
 [2]
 Moore also admitted at his deposition that he did not know who Henderson's "brothers" were, but claimed that they must belong to "one of the Disciple organizations because that's what Henderson is ."