**Carl HENDERSON, Petitioner–Appellant,**

**v.**

**UNITED STATES PAROLE COMMISSION and Patrick W. Keohane, Warden, United States Penitentiary, Terre Haute, Indiana, Respondents–Appellees.**

No. 93–1281.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 23, 1993.

Decided Jan. 6, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied March 15, 1994.

---

Charles D. Weisselberg, Michael J. Brennan, Dennis E. Curtis, Robert E. Dugdale (argued), University of Southern California Law Center, Los Angeles, CA, for petitioner-appellant.

Thomas E. Kieper, Asst. U.S. Atty., Jill E. Zengler (argued), Office of the U.S. Atty., Indianapolis, IN, for respondents-appellees.

Before BAUER, CUDAHY, and ROVNER, Circuit Judges.

BAUER, Circuit Judge.

One day, while incarcerated in a federal prison, Carl Henderson punched one of his fellow inmates in the face. Prison officials punished Henderson for his pugilistic act. Henderson did not believe the punishment was fair or, at least, that it was imposed in accordance with the Constitution. He therefore filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. The district court denied Henderson's petition and dismissed the case with prejudice. We affirm.

### I.

Carl Henderson is currently incarcerated at the United States Penitentiary in Terre Haute, Indiana. Henderson is serving time for a variety of criminal convictions. In 1978, Henderson was convicted of bank robbery in violation of 18 U.S.C. § 2113. He was paroled on October 28, 1982. While out of prison on parole, Henderson managed to avoid run-ins with the law until November 21, 1985. On that date, Henderson violated both the conditions of his parole and normal human decency when he bit off the left ear of a man and beat him with a sledgehammer. For this incident, Henderson landed back in jail, was convicted of assault with intent to kill, and sentenced to a two to six year term of imprisonment. From November 21, 1985 until his trial and sentencing on February 20, 1987, Henderson was held on a parole violator warrant in pre-trial custody. Henderson spent part of that time at the Lorton Reformatory in Lorton, Virginia. Apparently, still restless and untamed, Henderson became involved in yet another act of violence at Lorton. He incited others to riot and commit arson. Henderson received another sentence, this one of eleven years, to be served consecutively with the two to six year sentence for the ear-biting/sledgehammer-beating incident. He has been in continuous custody since November 21, 1985.

The event at issue in this case occurred on March 21, 1989. Henderson's version follows. While imprisoned at a federal penitentiary in Memphis, Tennessee, Henderson was typing in the prison's law library. He left his typewriter to make some copies. When Henderson returned, he found his seat and typewriter occupied by fellow inmate Kenneth Johnson. Henderson asked Johnson to move so that he (Henderson) could finish typing. Johnson reacted violently to his request. Johnson jumped out of his seat, thrust himself against Henderson, and said, "I don't care about no typewriter, but I don't let nobody like you talk to me any kind of way and I'll beat your ass." Ex. A. to R. Doc. 3. Johnson, described as a burly man who outweighed Henderson by at least thirty-five pounds, balled up his fists as if to hit Henderson. Henderson tried to retreat, but it was no use. Johnson blocked any escape and backed him against a table. Johnson continued to threaten him and Henderson announced to the other inmates then in the room, "Y'all see what is happening and that he is trying to start something, and if anything happens all you can say is that I didn't do a thing." Id. Henderson made one final attempt to escape, but Johnson stopped him and clenched his fist again. Henderson decided to make a preemptive strike and swung first. It was a one-punch fight. Henderson hit Johnson square in the face and dropped him to the floor. Judging from the results, the blow was quite powerful. The punch broke Johnson's nose, loosened several of his teeth, and possibly fractured his left cheek bone. No members of the prison's staff were present when Henderson hit Johnson.

Punching fellow inmates violates prison rules. Prison officials investigated the incident and charged Henderson with assault in violation of Code 101 of 28 C.F.R. § 541.13, Table 3. The prison's Unit Disciplinary Committee referred the matter to a Discipline Hearing Officer ("DHO"). The DHO scheduled a hearing for April 12 and, a week before that date, advised Henderson of the charges against him. The DHO also advised Henderson of the following rights: (1) the right to have a copy of the charges at least 24 hours before the hearing; (2) the right to have a member of the staff represent him; (3) the right to call witnesses and present documentary evidence (provided institutional safety would not be jeopardized); (4) the right to present a statement or remain silent; (5) the right to be present throughout the hearing except during deliberation or when safety would be threatened; (6) the right to be advised of the DHO's decision, including the facts supporting that decision, except when institutional safety would be jeopardized; and (7) the right to appeal to the Regional Director.

At the hearing, Henderson waived his right to be represented by a staff member and presented three witnesses, all of whom were fellow prisoners. Each testified that Henderson punched Johnson in self-defense. Henderson submitted a three-page statement in which he stated that he acted in self-defense when he hit Johnson. The DHO also considered several apparently confidential memoranda and a confidential investigatory report prepared by the prison's staff, an incident report (which was given to Henderson), photographs of Henderson and Johnson, and injury assessment forms of the two men. Except for the incident report, these items were included among confidential materials that the government later filed *in camera* with the district court.

The DHO was not persuaded by Henderson's self-defense claim. In an opinion written pursuant to 28 C.F.R. § 541.-17(g), the DHO reasoned that if Henderson had time to make a statement—that everyone could see what was happening and that Johnson was trying to start something—he could have used this time to leave the area and avoid the confrontation.[1] The DHO therefore found Henderson guilty of assault and sanctioned Henderson to thirty days in disciplinary segregation. Henderson also had to forfeit one hundred days of statutory good time and the DHO recommended that Henderson receive a disciplinary transfer to another prison.

Henderson appealed the DHO's decision to the Regional Director. On May 30, 1989, the Regional Director reviewed the reasons for the DHO's decision, denied Henderson's appeal, and advised Henderson that he had the right to appeal within thirty calendar days to the Assistant Director Program Review Division. In the meantime, on June 22, 1989, Henderson received a disciplinary transfer to the Lompoc Penitentiary in Lompoc, California. Henderson tried to appeal the Regional Director's unfavorable decision, but his appeal was rejected as untimely.

On November 7, 1990, Henderson attended a parole revocation hearing that resulted from the parole violator conduct (the ear-biting/sledgehammer-beating incident). Not surprisingly, Henderson's parole date was adversely affected by the disciplinary sanction he received for punching Johnson. The Parole Commission cited the incident as "new criminal conduct" which, according to Henderson's complaint, added at least forty months to his parole date. Henderson appealed to the National Appeals Board of the Parole Commission. The appeal was denied. Henderson then filed this habeas action in the district court to challenge the actions of

---

1. Section 541.17(g) provides:

(g) The Discipline Hearing Officer shall prepare a record of the proceedings which need not be verbatim. This record must be sufficient to document the advisement of inmate rights, the DHO's findings, the DHO's decision and the specific evidence relied on by the DHO, and must include a brief statement of the reasons for the sanctions imposed. The

evidence relied upon, the decision, and the reasons for the actions taken must be set out in specific terms unless doing so would jeopardize institutional security. The DHO shall give the inmate a written copy of the decisions and disposition, ordinarily within 10 days of the DHO's decision.

28 C.F.R. § 541.17(g).

the Bureau of Prisons and the Parole Commission.

## II.

Henderson raises several issues on appeal. Henderson first objects to information that the district court considered *in camera* and contends that nothing other than these so-called secret documents supports the DHO's finding that he committed an assault. Henderson argues that if the DHO considered the *in camera* documents, the DHO violated due process by failing to disclose or summarize this evidence. Henderson also argues that the DHO used the incorrect standard to assess evidence during the disciplinary hearing. Finally, Henderson contends that the district court erred by dismissing his petition without conducting an evidentiary hearing.

■ At issue in this case, as an initial matter, is whether the hearing conducted by the DHO violated Henderson's rights under the Due Process Clause of the Fifth Amendment. That provision declares that "[n]o person shall ... be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Henderson has a liberty interest at stake in this case because the DHO's decision deprived him of one hundred days of statutory good time and because the effect of the decision, as his complaint alleges, was to lengthen his time in prison. So, we ask whether the DHO deprived Henderson of liberty without providing him all the process he was due.

■ Prison disciplinary hearings, like the one at issue in this case, are not criminal prosecutions and the full panoply of rights accorded criminal defendants are not available. *Ponte v. Real,* 471 U.S. 491, 495, 105 S.Ct. 2192, 2195, 85 L.Ed.2d 553 (1985). Still, prisoners are "persons" within the meaning of the Due Process Clause and they are therefore protected by that provision. The Supreme Court has delineated three due process rights that prisoners have in this context: (1) advance written notice of the charges against them at least twenty-four hours before the hearing; (2) the opportunity to call witnesses and present documentary

evidence in their defense when consistent with institutional safety and correctional goals; and (3) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action. *Superintendent v. Hill,* 472 U.S. 445, 454, 105 S.Ct. 2768, 2773, 86 L.Ed.2d 356 (1985); *Wolff v. McDonnell,* 418 U.S. 539, 564, 566, 94 S.Ct. 2963, 2978, 2979, 41 L.Ed.2d 935 (1974). A prisoner also should be afforded the opportunity to be heard before an impartial decision maker. *Rasheed–Bey v. Duckworth,* 969 F.2d 357, 361 (7th Cir.1992).

■ The DHO's decision satisfies due process if it is supported by some evidence in the record. *Hill,* 472 U.S. at 455, 105 S.Ct. at 2774. The "some evidence" standard requires us to ask whether there is *any* evidence in the record that could support the DHO's conclusion. *Id.* at 455–56, 105 S.Ct. at 2774. We will overturn the DHO's decision only if no reasonable adjudicator could have found Henderson guilty of the offense on the basis of the evidence presented. *Sanchez v. Miller,* 792 F.2d 694, 703 n. 15 (7th Cir.1986), *cert. denied,* 479 U.S. 1056, 107 S.Ct. 933, 93 L.Ed.2d 984 (1987); *Jackson v. Carlson,* 707 F.2d 943, 949 (7th Cir.), *cert. denied,* 464 U.S. 861, 104 S.Ct. 189, 78 L.Ed.2d 167 (1983).

The hearing conducted by the DHO in this case satisfies all of these standards. Henderson was given advance written notice of the charges against him and was allowed to call witnesses and present evidence. Also, the DHO issued a written statement of the reasons for his decision to punish Henderson. Additionally, there is no suggestion that the DHO was partial in any way. Some evidence—Henderson's punch and his statement that everyone could see what was going on—supported the DHO's decision.

Henderson challenges none of this, but instead attacks the use by the DHO and the district court of confidential information. The government (which includes the United States Parole Commission and Patrick Keohane, warden of the United States Penitentiary) filed a motion to file exhibits *in camera.* The two exhibits that were the subject of the motion contained medical records of both Johnson and Henderson, the Bureau of

Prisons' investigative report, and the presentence investigation reports prepared for sentencing after Henderson's convictions.

■ There are four ways to establish that confidential information is reliable: (1) by oath of the investigating officer as to the truth of the officer's report containing confidential information and the officer's appearance before the disciplinary committee; (2) corroborating testimony; (3) a statement on the record by the chairman of the disciplinary committee that he or she had firsthand knowledge of the sources of information and considered them reliable on the basis of their past record of reliability; or (4) *in camera* review of material documenting the investigator's assessment of the credibility of the confidential informant. *Mendoza v. Miller,* 779 F.2d 1287, 1293 (7th Cir.1985), *cert. denied,* 476 U.S. 1142, 106 S.Ct. 2251, 90 L.Ed.2d 697 (1986). The government, obviously, chose the last of these four options when it filed its motion to file exhibits *in camera.* The district court granted the government's motion and reviewed the record as a whole.

■ There was nothing improper and certainly nothing unconstitutional about the district court's decision to grant the government's motion. We repeat: a prison disciplinary proceeding is not a criminal prosecution. Prisoners in this context do not possess Sixth Amendment rights to confront and cross-examine witnesses. *Wolff,* 418 U.S. at 568, 94 S.Ct. at 2980. Additionally, there is no due process right to be informed of the identity of confidential informants. *Mendoza,* 779 F.2d at 1294. We review the district court's findings as to the reliability of the *in camera* materials under the clearly erroneous standard. *Wells v. Israel,* 854 F.2d 995, 1000 (7th Cir.1988). With these standards in mind, we consider the specific arguments that Henderson raises on appeal.

■ Henderson first claims that the district court erred by considering information—the *in camera* exhibits—not considered by the DHO. The record, however, indicates otherwise. The DHO's opinion states that the DHO considered several staff memoranda, an investigatory report, photographs, and injury assessment forms. These are among the items filed *in camera* with the district court. The DHO heard the testimony of Henderson's witnesses and considered Henderson's statement, all of which demonstrated that Henderson delivered the one and only punch. Standing alone, this was some evidence and therefore enough evidence to support the DHO's conclusion that Henderson assaulted Johnson. Besides, the DHO was not required to accept as true either Henderson's version of the events or that of his three witnesses.

Henderson's next contention is also without merit. He argues that if the *in camera* exhibits were considered by the DHO, the DHO violated due process by failing to disclose or summarize this evidence. This argument relies for its strength on a misunderstanding of the law. Section 541.17(g) directed the DHO to set out in specific terms the evidence relied upon and the reasons for the actions taken *"unless* doing so would jeopardize institutional security." 28 C.F.R. § 541.17(g) (emphasis added). See also *supra* note 1. As this language indicates, the DHO is not absolutely required by regulation to disclose or summarize the evidence it relies upon for its decision. Certainly, there is nothing about Section 541.17(g) that on its face violates due process or, for that matter, any other constitutional standard. Of course, nothing violated the Constitution about the DHO's application of Section 541.17(g) in this case. Simply put, neither the Due Process Clause nor any other constitutional provision (nor any federal statute or regulation) required the DHO to state on the record the factual basis for its finding as to the reliability of any confidential information that it may have relied on. *Mendoza,* 779 F.2d at 1295.

■ Henderson also complains that the district court committed reversible error because it did not determine that the *in camera* exhibits contained reliable information. The district court commented that it examined the entire record, but did not explicitly determine the reliability of the *in camera* exhibits. Given the court's conclusion—that there is no constitutional violation—the inference is obvious. The district court must

have felt that the *in camera* exhibits were reliable. We have carefully examined the *in camera* exhibits and agree with the district court's unstated conclusion: the *in camera* exhibits are reliable. We caution, as we did in *Wells*, 854 F.2d at 999, that the district court should ordinarily review such confidential documents and determine if they are reliable. The district court's opinion in this case states that it reviewed the entire record. Although we accept as sufficient such general comments in this case, our review would be easier if the district court simply stated that it determined whether or not the confidential information filed *in camera* was reliable. Still, our own review of these materials satisfies us of their reliability.

Henderson's final two arguments challenge (1) the standard of proof used at the hearing conducted by the DHO and (2) the district court's decision not to hold an evidentiary hearing. First, as to the standard used by the DHO to assess the evidence, Henderson points out that in a form entitled "Checklist for DHO Actions," the DHO checked off the following:

> The findings of the DHO are supported by some facts. If there was conflicting evidence, the findings are supported by the more credible evidence.
>
> There is some evidence to support each finding & conclusions.
>
> The specific evidence relied on is adequately documented in the record with specific evidence and facts cited (physical evidence, observations, written documentation, etc.).

Ex. 22 to R.Doc. 10. Henderson argues that this checklist suggests that the DHO did not apply a "greater weight of the evidence" standard which, Henderson says, is the appropriate constitutional standard of proof. The district court stated, and we agree, that this checklist is merely a bureaucratic attempt at uniformity and is not determinative of the standard of evidence used by the DHO. The Supreme Court has never held that the Due Process Clause requires the DHO to adhere to some narrowly-worded standard of evidence such as Henderson's proposed "greater weight of the evidence" standard. In the absence of such a directive, we need not set forth some exact standard here. Rather, as we have said, we ask only if the DHO's decision was supported by some evidence. It was.

Finally, Henderson argues that the district court erred when it dismissed his complaint without an evidentiary hearing. But, we ask, what was there to hear? Henderson says that a hearing would have established whether or not the *in camera* exhibits were reliable. As we have said, though, we examined those exhibits, as did the district court, and find that they are reliable.

### III.

The district court's decision to dismiss Henderson's petition for writ of habeas corpus is

AFFIRMED.