57 F.3d 1073
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 Fabio A. DIAZ, Petitioner-Appellant,
v.
Danny R. McBRIDE, Respondent-Appellee.
 No. 94-1136.
 United States Court of Appeals, Seventh Circuit.
 Submitted April 26, 1995.*
Decided June 6, 1995.
 
 Before PELL, MANION and ROVNER, Circuit Judges.
 
 ORDER
 
 1
 Fabio Diaz, an inmate at Westville Correctional Center, appears again before this court, this time contesting a decision by the Conduct Adjustment Board (CAB) to remove 180 days of accumulated credit time from Diaz's release date and to demote Diaz one level in credit class because Diaz operated an extortion and blackmail scheme in prison. In his petition for habeas corpus relief, 28 U.S.C. Sec. 2254, Diaz complains that the evidence was insufficient to support the CAB's verdict, the CAB violated Diaz's right to due process, and the CAB's decision altered the sentence the district court imposed upon him.
 
 
 2
 According to the state, in December 1992, the mother of an inmate of Westville Correctional Center contacted prison authorities and reported that another inmate threatened to harm her son unless money was paid to certain individuals. The mother sent several money transfers through Western Union, one of which was made payable to "Fatimo Diaz." Michael Spears, the prison investigating officer, discovered that Fatimo Diaz was Fabio Diaz's brother, interviewed Fabio Diaz in April 1993, and subsequently charged Diaz with extortion. The state contends that another victim whom Diaz extorted identified Fabio Diaz as the offender, but the state's reference in the record does not support this contention. See F.R.A.P. 28(e).
 
 
 3
 Diaz claims that other inmates perpetrated the extortion scheme. According to Diaz, Bob Allen conspired with Terry Clark to coerce Allen's family to give Allen more money. Clark called Allen's parents and threatened to harm Allen unless money was paid to Diaz's brother. When Diaz's brother transferred the money, Diaz alleges that Clark arranged for a prison official, Eric Duncan, to pick up the money and procure drugs for Clark and Allen. Then, feeling the pride of their success, Clark and Allen called Diaz's brother and threatened to harm Diaz unless money was paid. According to Diaz, his brother sent $300. On October 8, 1992, Diaz filed an offender grievance report complaining that an inmate had called his brother, threatened to harm Diaz unless money was paid, and coerced his brother to send money to Kathy Gill. The record also shows affidavits from other inmates alleging that Clark propositioned these inmates to help extort money from Allen's family.
 
 
 4
 Diaz requested that Allen, Clark, and Page be called as witnesses at the CAB hearing. However, only Page was called as a witness because, according to the state, Diaz did not provide an explanation for his need for the testimony of Clark and Allen. Diaz admitted to the CAB that he was prepared for the hearing and pleaded not guilty. The CAB found Diaz guilty, issuing the following statement:
 
 
 5
 After reviewing the CR Investigator's report, witness and offender's testimony and Western Union receipt, the CAB finds guilty based on preponderance of evidence in which there was complaint from an offender's mother, the money order transfer received from the complainant sending money to Fatimo Diaz (Fabio Diaz brother) and the victim stating that he had been threatened and told to send money to Diaz and that Fatimo sent money to Fabio on occasion.
 
 
 6
 Diaz was sanctioned with the deprivation of 180 days credit time and the demotion of one credit class.
 
 
 7
 Good credit time is a liberty interest which cannot be deprived without due process. Due process entitles an inmate to (a) advance written notice of the charges, (b) an opportunity to call witnesses and present evidence in his defense when the presentation is not unduly hazardous to institutional safety and correctional goals, and (c) a written statement by the fact finder of the evidence relied upon and the reasons for the disciplinary action. Superintendent, Mass. Correctional Institution v. Hill, 472 U.S. 445, 454 (1985); Wolff v. McDonnell, 418 U.S. 539, 563-67 (1974). Because Diaz is proceeding on appeal pro se, we will read his brief liberally. Bagola v. Kindt, 39 F.3d 779, 780-81 (7th Cir. 1994).[1]
 
 
 8
 Diaz first argues that the evidence was insufficient to support the CAB's verdict. Our review of the CAB's decision is extremely narrow-- we will uphold the finding of the disciplinary board so long as there is "some evidence" in the record that could support the CAB's decision. Henderson v. United States Parole Commission, 13 F.3d 1073, 1078 (7th Cir.), cert. denied, 115 S. Ct. 314 (1994). We will overturn the CAB's decision only if no reasonable adjudicator could have found Diaz guilty of the offense on the basis of the evidence presented. 13 F.3d 1073, 1077.
 
 
 9
 The record shows that the CAB relied on the testimony of Page and Diaz, reviewed the investigator's report and the receipt from the Western Union money transfer. Although this evidence suggests that Diaz's brother was involved in the extortion scheme, nothing in the record links Diaz with the extortion. The government failed to trace a credit in Diaz's prison account corresponding in time or amount to the extortion payoff or to present any testimony that identified Diaz as the extorter. Further, the government did not rebut Diaz's contention that other inmates planned the extortion or explain Diaz's grievance report. Although the government stated that the investigator spoke with other inmates and the victim, apparently these people did not testify at the hearing and the investigator did not record in his report any evidence connecting Diaz to the extortion. Without some evidence linking Diaz with the extortion money or the threats, the decision of the board is not supported by "some evidence." See Hill, 472 U.S. at 454, 105 S. Ct. at 2773 (evidence supporting administrators' decision must be in the record to assure that prisoner's rights have not been abridged unfairly) (quoting Wolff, 418 U.S. at 565, 94 S. Ct. at 2976). Thus, the case must be reversed and remanded.
 
 
 10
 Diaz also claims that he was denied due process because the government refused to allow him to call as witnesses Allen and Clark. The government stated three reasons why Allen and Clark were not allowed to testify: (a) the witnesses had been transferred to another correctional institution, (b) Diaz waived his right to call the witnesses by stating that he was prepared for the hearing, and (c) Diaz gave no reason as to the need to call Allen and Clark. Though a prisoner has the right to call witnesses, this right is necessarily limited by the prison's need to maintain institutional safety or correctional goals. The prison may refuse an inmate's request to call a witness "to avoid situations that may trigger deep emotions and that may scuttle the disciplinary process as a rehabilitation vehicle." Wolff 418 U.S. at 568, 94 S. Ct. at 2982. We believe that Diaz waived his right to call these witnesses because he stated to the Board that he "was prepared" to go forward with the hearing and did not object to the absence of the witnesses. See id. (prison has broad discretion to determine if prisoner may call witness); Lostutter v. Peters, No. 93-3998, slip op. at 2 (7th Cir. March 9, 1995) (failure to contemporaneously object waives issue on appeal).
 
 
 11
 Diaz's remaining claims are frivolous. First, the deprivation of good time credits did not alter the sentence imposed by the district court. The district court sentenced Diaz to twenty years imprisonment. Though it is possible that Diaz could be released before that time if he earns good time credits, Diaz is not guaranteed an earlier release. Also, the CAB and the district court had jurisdiction over Diaz because the alleged offense was committed in Indiana and Diaz was in Indiana.
 
 
 12
 REVERSED AND REMANDED.
 
 
 13
 PELL, Circuit Judge, dissenting.
 
 
 14
 Because I am of the opinion that the district court judge, one of many years of experience as a trial judge, correctly decided this case, which in my opinion should have resulted in an affirmance adopting his opinion, I respectfully dissent.
 
 
 15
 If this were a direct appeal, the result might be different but this is a case of a petition seeking relief in a federal court under U.S.C. Sec. 2254. As the district court judge states after reviewing the proceedings before the CAB: "It needs to be emphasized that this court does not sit as a trier de novo in prisoner disciplinary proceedings and does not sit as a court of general common law review. The collateral review that is envisioned by Sec. 2254 focuses on violations of the federal constitution. See Bell v. Duckworth, 861 F.2d 169 (7th Cir. 1988), cert. den., 489 U.S. 1088 (1989). This court did not see or hear the witnesses and the weight and credibility of the witnesses is to be decided by the CAB. This courts federal question jurisdiction cannot be involved simply to require state officials to comply with state law. See Estelle v. McGuire, U.S. , 112 S.Ct. 475 (1991)." The judge found no basis for relief in the record of the proceedings which he had reviewed.
 
 
 16
 The CAB here conducted a hearing and heard evidence which satisfied the CAB that there was sufficient evidence to sustain the charge. We can only look at the record as it was preserved in writing. The CAB not only heard this but, just as in the case of a trial jury, had an opportunity to form an opinion on the verity of witnesses including Diaz. The connection with his brother who was involved in financial transactions from outside the prison was before the CAB.
 
 
 17
 Case authority does not require overwhelming evidence in the review of prison disciplinary board findings even though the evidence on the record was meagre.
 
 
 18
 In the Supreme Court case Superintendent v. Hill, for example, the Court upheld a finding of guilty for assault based on a prison guard's testimony that he discovered an inmate who had just been assaulted; that he saw three inmates, including the inmate Hill, fleeing together down an enclosed walkway; and that he saw no other inmates in the area. 472 U.S. 445, 456-57 (1985). The Court held that even though there was no direct evidence identifying any one of the three inmates as the assailant, the evidentiary standard of "some evidence" had been met.
 
 
 19
 Likewise, in Hamilton v. O'Leary, the Seventh Circuit upheld the prison disciplinary board's finding that inmate Hamilton possessed six homemade weapons even though there was no direct evidence identifying Hamilton as the owner of the contraband. 976 F.2d 341, 346 (7th Cir. 1992). The weapons were found during a shakedown in a vent accessible to Hamilton and three other inmates occupying the same cell. This evidence was considered sufficient.
 
 
 20
 It appears to me with the financial connection with his non-imprisoned brother and the evidence of money transactions that the brother had had, the CAB's decision should not be set aside.
 
 
 21
 It should be noted that Diaz is no stranger to court visitation. Indeed the respondent asked that Diaz be sanctioned for filing this frivolous appeal. Presumably because the judgment below is being reversed, no attention was given to the request for sanctions. The reason for sanctions was set forth in a footnote in the respondent's brief as follows:
 
 
 22
 This Court has previously warned this Appellant that the filing of frivolous and meritless appeals may result in the imposition of sanctions against him. Diaz v. Richards, cause no. 92-2639, unpublished order. (Appellee's Appendix 4). The Court noted that Diaz had filed seventeen appeals to the Seventh Circuit in the last five years alone. Diaz has continued to clutter the district courts, this Court and the state trial and appellate courts with meritless cases. (See e.g. Diaz v. Superior Court One and Judge Anthony Metz, cause no. 49A04-9310-CV-400 in the Indiana court of Appeals, filed October 12, 1993.) Sanctions should be imposed against him.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed. R. App. P. 34(a); Cir. R. 34(f). No such statement having been filed, the appeal is submitted on the briefs and record
 
 
 [1]
 The government suggests that because Diaz has filed various pro se complaints with the court that he should not be considered pro se. However, Diaz's past petitions and briefs do not equal the training and experience of a lawyer who has studied in law school and passed the bar. See United States v. Goad, 44 F.3d 580, 589 (7th Cir. 1995) (despite pro se litigant's extensive experience, court recommended Goad against proceeding pro se); compare Smart v. Board of Trustees, 34 F.3d 432, 435 (7th Cir. 1994) (pro se plaintiff was a lawyer and briefs were competent professional products)