Richard J. HOSKINS, Petitioner,

v.

Daniel R. McBRIDE, Respondent.

No. 3:01 CV 0272 AS.

United States District Court,
N.D. Indiana,
South Bend Division.

May 22, 2002.

Richard J. Hoskins, pro se.

Wayne Uhl, Indianapolis, IN, for Respondent.

### *MEMORANDUM AND ORDER*

ALLEN SHARP, District Judge.

On April 4, 2001, *pro se* petitioner, Richard J. Hoskins, an inmate at the Indiana State Prison (ISP) in Michigan City, Indiana, filed a petition seeking relief under 28 U.S.C. § 2254. The Response filed on behalf of the respondent by the Attorney General of Indiana on October 10, 2001, demonstrates the necessary compliance with *Lewis v. Faulkner*, 689 F.2d 100 (7th Cir.1982). The petitioner filed a Traverse on May 10, 2002

The Attorney General of Indiana has placed before this Court a series of documents designated R.1 through R.36, which explicate in detail the underlying procedures in this conduct adjustment board (CAB) proceeding. There was a finding here of guilt, a sanction of a loss of 365

days of credit time, and a demotion to credit time earning class III. *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) is implicated. There was both a hearing and a rehearing here.

The Petitioner claims that the State violated his constitutional rights in a number of ways: by not allowing him to view a security video and other physical evidence; by not having the witnesses answer the specific questions he wanted to ask; and by giving him a higher sentence on remand, which he claims indicates that the CAB was biased and retaliated against him. In addition, he claims that the Board lacked sufficient evidence to convict him of drug trafficking. Hoskins has exhausted his administrative appeals. The Court has considered the submissions of the parties and now rules as follows.

## I. RELEVANT FACTS

On November 28, 1999, three visitors came to the PC/Segregation visiting area to see Hoskins. Prior to that time, Captain Webb had received a tip from an unnamed source that an offender from IDU planned to receive contraband from a visitor, and that it would be left in a trash can in the visitor's area and retrieved by an inmate porter. *Id.* That information was relayed to Captain Morton and Officer Thornberry. Both trash cans in the visitor's area were searched before the visitors came and determined to be clear of contraband, then searched again after the visitors left. *Id.* In a small trash can near the pop machine, Officer Thornberry found two chip bags containing 10 grams of marijuana and two separate bags of tobacco. *Id.* The contraband was replaced with filler, and the bags put back in the trash can. Id. Later in the same day, the porter, an offender named Brown, retrieved the bags from the trash can and was stopped. Id. Brown claimed that he knew about the tobacco, but not the drugs, and refused to

identify to whom he was delivering the items. *Id.*

Captain Morton was watching the visitor's area on a monitor for the last fifteen minutes of the visit, and did not see anyone put anything into the small trash can. Resp. Ex. 3. He then went to the video room and played back the camera, which clearly showed the small trash can. *Id.* The only person he observed throwing anything into the small trash can was a boy who walked over and threw something in at approximately 11:57 A.M. At the time, two inmates from IDU had visitors: the Petitioner, Hoskins, and another inmate named Akemon. However, Hoskins was the only inmate who had a child visitor during this time, and it was determined that the boy on the video was Hoskin's nephew. Based on the video, prison officials determined that the drugs were intended for Hoskins, and he was sanctioned with a demotion to credit earning class III, and revocation of 365 days of earned good time credits, suspended. Hoskins appealed, and the case was remanded because Hoskins had asked for a statement from Brown, and instead the CAB used a hearsay statement from Captain Morton as to what Brown said. Resp.'s Ex. 11. A second CAB hearing was held before a different board. Hoskins requested information from three witnesses, Webb, Taylor, and the informant, specifically, the name of the "certain offender from IDU" who was supposed to receive the contraband. He also requested to view all the physical evidence, including the drugs, the potato chip bags, and the security video. Resp.'s Mem. in Supp. at 5. In addition, Hoskins wanted statements from the other prisoners who had visitors at the time to find out if they saw anything. *Id.* Webb and Taylor filed additional statements, but they did not answer Hoskins question, stating only that they were not present and had no knowledge of the incident. Resp.'s Ex.'s 14 and

15. Brown wrote a statement saying that he was only found in possession of empty chip containers, that he did not traffic or intend to traffic anything to Hoskins, and that he did not think Hoskins was even aware of the alleged incident. Resp.'s Ex. 16. The chairman of the second CAB, John Barnes, filed a declaration stating that he reviewed the physical evidence and watched the security camera videotape before the hearing, in the evidence room. Resp.'s Ex. 36.

Based on the physical evidence, the videotape, the conduct report, and witness statements, the CAB found Hoskins guilty of "attempted trafficking" and sanctioned him with demotion to credit earning class III, and revocation of 365 days of earned good time credits, this time not suspended. Resp.'s Ex. 17. The CAB gave as reasons for imposition of the sanction the seriousness of the offense, the degree to which the offense disrupted or endangered the security of the facility, and the likelihood that the sanction will have a corrective effect on the offender's future behavior. *Id.*

Hoskins appealed this decision, and initially the final reviewing authority, C.A. Penfold, remanded the case for a rehearing so offender Hoskins could view the videotape. Trav. Ex. 8. However, five days later, after consulting with the Department's Legal Services, Penfold rescinded the order and denied the appeal based on his conclusion that having the Conduct Adjustment Board review the videotape was adequate, and that denying Hoskins' request to view the tape for "security reasons" was legitimate. Resp.'s Ex. 34. Hoskins then filed this action for habeas corpus review in federal court.

## II. STANDARD OF REVIEW

■ As the loss of good time credit is a "liberty" interest protected by the Fourteenth Amendment to the Constitution, it triggers the applicability of *Wolff v.*

*McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), and requires certain procedural steps as stated in that Supreme Court decision. Due process requires that Hoskins be given: (1) advance written notice of the charges against him at least 24 hours before the hearing; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action. *Henderson v. U.S. Parole Comm'n,* 13 F.3d 1073 (7th Cir.1994) (citing *Wolff v. McDonnell,* 418 U.S. 539, 563–567, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)).

■ For the hearing to be meaningful, the prisoner should be afforded an opportunity to be heard before an impartial decision maker, *id.,* and the decision must be supported by "some evidence" in the record. *Superintendent, Mass. Corr. Institution, Walpole v. Hill,* 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985). The so-called "some evidence" standard applies in this circuit, as reflected in *Webb v. Anderson,* 224 F.3d 649 (7th Cir.2000), *cert. denied,* 531 U.S. 999, 121 S.Ct. 497, 148 L.Ed.2d 468, 2000 WL 1512783 (U.S.), *McPherson v. McBride,* 188 F.3d 784 (7th Cir.1999), and *Meeks v. McBride,* 81 F.3d 717 (7th Cir.1996).

■ This is a lenient standard, requiring no more than "a modicum of evidence." *Webb,* 224 F.3d at 652. Even evidence that can be characterized as meager is sufficient to support the revocation of good-time credits so long as "the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary." *Id.* citing *Hill,* 472 U.S. at 457, 105 S.Ct. 2768. It is not this Court's province to assess the comparative weight of the evidence underlying the board's decision, "the relevant

question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id. citing Hill,* 472 U.S. at 455–56, 105 S.Ct. 2768.

## III. DISCUSSION

Hoskins raises five constitutional challenges to his CAB proceedings and sanctions. He claims that he was denied witness testimony favorable to his defense; that he was denied the introduction of tangible and documentary evidence supportive of his defense and innocence; that the evidence was insufficient to meet the "some evidence" standard; that due process was violated because he received a higher sanction for the same offense after his case was remanded; and that the second CAB was not impartial. The Court will address each of these concerns in the order that Hoskins raised them.

### A. The Witnesses

■ Prisoner's have the right to call witnesses to testify on their behalf at CAB hearings when consistent with institutional safety and correctional goals. *Henderson,* 13 F.3d 1073 (citations omitted). However, that right is not an unlimited right. *See, Sweeney v. Parke,* 113 F.3d 716, 719 (7th Cir.1997). Prison officials have discretion to determine whether to have the witnesses present or to allow them to submit a written statement. There is no right to confront witnesses at a CAB hearing. *Wolff,* 418 U.S. at 567–8, 94 S.Ct. 2963.

■ In this case, prison officials allowed Hoskins' witnesses to provide written statements. Hoskins wanted specific information from three witnesses, the name of the "certain offender" named in the tip. One of the witnesses that Hoskins wanted a statement from was the infor-

mant. The record does not say why this specific question was not put to the two witnesses who wrote statements, nor why the informant was not asked to write a statement, but the answer to this question is irrelevant, as the tip did not form the basis for the CAB's decision.[1] The decision was based on the physical evidence, the conduct reports, and the security video. Due process is not denied if witnesses are not asked to give testimony that is irrelevant or repetitive. *Forbes v. Trigg,* 976 F.2d 308 (7th Cir.1992).

■ The information Hoskins hoped to get from Officer Taylor regarding other inmates that were under surveillance for trafficking is also irrelevant. It is clear from the record that offender Akemon was also a suspect, but that the videotape cleared Akemon and pointed towards Hoskins. In addition, contrary to Hoskins claims, the videotape was sufficient to show that no other person could have placed the contraband in the small trash can, as discussed below, making testimony from other prisoners present in the visitors' room unnecessary. Because of the irrelevance and repetitiveness of the testimony that Hoskins wanted from these witnesses, due process was not violated by the prison's failure to ask the specific questions Hoskins wanted asked, or to call other prisoners to testify.

### B. The Security Video and Other Physical Evidence

■ The law is now well established in this circuit that an inmate has the right to have security videos viewed by the Conduct Adjustment Board (CAB) in considering whether the inmate violated prison rules. *See, Cox v. McBride,* 279 F.3d 492 (7th Cir.2002), *Eads v. Hanks,* 280 F.3d

---

1. Hoskins may be reading too much into the phrase "a certain offender". It seems likely that if the informant had named a specific offender, prison officials would have conducted their investigation differently.

728 (7th Cir.2002), *Piggie v. McBride,* 277 F.3d 922 (7th Cir.2002), *White v. Indiana Parole Board,* 266 F.3d 759 (7th Cir.2001), and *Montgomery v. Anderson,* 262 F.3d 641 (7th Cir.2001). *See also Gaither v. Anderson,* 236 F.3d 817 (7th Cir.2000). Security videos are documentary evidence that the CAB is required to review if the inmate requests the tapes. *Piggie,* 277 F.3d at 925.

 However, no court has as yet found that the inmate, himself, has that right. *See, White,* 266 F.3d at 768; *Gaither,* 236 F.3d at 820. In *Gaither,* the Seventh Circuit noted that while *Chavis[ v. Rowe,* 643 F.2d 1281 (7th Cir.1981)] created a rule requiring disclosure of exculpatory evidence to an inmate, it "is limited to situations in which such disclosure would not create security issues." *Gaither,* 236 F.3d at 820. In that case, the court concluded that "prison officials articulated a legitimate security concern for refusing to disclose the videotape, namely, because they 'did not want the offenders to know the capabilities of the cameras for security reasons.'" *Id.* Therefore, until the Seventh Circuit rules otherwise, this Court declines Hoskins' invitation to find that a prison inmate has a constitutional right to view prison security videos containing either exculpatory or incriminating evidence, as long as the videotapes have been watched by the CAB chairman and the reviewing court. This Court can see no additional benefit to be gained by remanding this case for Hoskins to view the videotape, and the Respondent has shown a legitimate interest in preventing Hoskins from knowing the exact location and capabilities of the prison security camera in the visitor's room.

As to the other physical evidence, Hoskins has not shown how it would have helped him prepare his defense to see the contraband items. The physical evidence was reviewed by the CAB members and Hoskins knew what it was. The right to view the physical evidence used by the CAB in determining guilt is not listed in *Wolff* as one of inmates procedural rights guaranteed by the Constitution. *See, Rasheed–Bey v. Duckworth,* 969 F.2d 357, 361 (7th Cir.1992) (stating that the hearing board may rely on evidence that was not presented at the hearing). The Court concludes that Hoskins received all the process he was due, and that the State did not violate his rights by denying him access to the security video and other physical evidence.

## C. "Some Evidence"

Hoskins also challenges whether the CAB's decision was supported by "some evidence" as required by *Superintendent, Mass. Corr. Institution, Walpole v. Hill,* 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985). The videotape was the primary evidence used to link Hoskins to the contraband found in the IDU visiting area. Resp.'s Mem. in Supp. at 2. The CAB cited other evidence, such as the physical evidence, the conduct report and the witness statements, but without the videotape, the evidence only established that someone was attempting to traffic contraband, and that it was most likely either Hoskins or Akemon. Captain Morton watched the video and reported what he saw in the conduct report. It is unclear whether the first CAB watched the video, but John Barnes filed a Declaration on October 9, 2001, stating that he viewed the security video before the hearing. Hoskins claims that the second CAB did not watch the video, but provides no support for this claim.

Because the security video is such a critical piece of evidence for this Petitioner, the Respondent filed a copy under seal, and this Court has reviewed the videotape very carefully. The small trash can by the

pop machine is in plain view. During the time in question, several people walked past the trash can, but did not slow down or appear to put anything in. One woman walked over and put a pop can into the small trash can. The pop can is easily seen going into the trash can. A small boy is seen playing and running in circles. At one point, he walked up to the small trash can and put something into it. His back is to the camera, and it is not possible to tell what he is putting in the trash can. Then he turned and walked away.

▮▮▮ This is not much evidence, and it probably would not be enough to convict Hoskins of drug trafficking in a court of law, where the standard is beyond a reasonable doubt. However, a CAB hearing is *not* a state court proceeding, *see, White v. Indiana Parole Board,* 266 F.3d 759, 763 (7th Cir.2001), and the standard of review for this Court is very deferential under *Superintendent, Mass. Corr. Institution, Walpole v. Hill,* 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985). The State need only establish that the CAB's decision was supported by some evidence in the record, and the Court concludes that the security video showing Hoskins' nephew putting something into the small trash can, combined with the other evidence, meets the "some evidence" standard.

## D. The Second CAB Hearing

▮▮▮ Hoskins fourth and fifth claim are interrelated and will be discussed together, because the only evidence he has that the Board was biased is the fact that he got a harsher sentence after getting his case remanded for a new hearing. Hoskins argument that the imposition of a harsher sentence violates his constitutional rights seems at first glance to be similar to the United States Supreme Court case that he cites, *North Carolina v. Pearce,* 395 U.S. 711, 724–26, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). However, the proceeding in *Pearce,* was a state court proceeding, and the proceeding that Hoskins is challenging is *not* a state court proceeding. *See White, above.* In challenging the CAB's decision, Hoskins does not have the full range of rights available to defendants in state court proceedings, but rather the limited rights afforded by the Supreme Court decision in *Wolff.* The right he is claiming, not to receive a harsher sentence on remand, is not included in *Wolff* or any other Supreme Court decision, and therefore does not apply in the context of prison disciplinary hearings.

He does have a right, however, to have his case considered by an impartial decisionmaker. *See, Wolff,* 418 U.S. at 571, 94 S.Ct. 2963. However, neither *Wolff,* nor any subsequent Supreme Court case has precisely outlined the definition of an "impartial decisionmaker." The Court in *Wolff* held that a prison disciplinary board made up of three prison officials was sufficiently impartial to satisfy the requirements of due process. *Id.* The mere fact that the disciplinary board officers are prison officials with an interest in the maintenance of order in the prison does not violate the requirement of impartiality. *Id.* The Court required some demonstration of actual bias by the individual hearing officer. *Id.* Justice Marshall, in his partial concurrence, elaborated slightly upon this principal when he stated, "in my view, due process is satisfied as long as no member of the disciplinary board has been involved in the investigation or prosecution of the particular case, or has had any other form of personal involvement in the case." *Id.* at 592, 94 S.Ct. 2963.

▮▮▮ The Seventh Circuit Court of Appeals has also elaborated on the issue of impartial decisionmakers, in *Merritt v. De Los Santos,* 721 F.2d 598 (7th Cir.1983), and *Redding v. Fairman,* 717 F.2d 1105 (7th Cir.1983). In *Merritt,* the Court

barred a correctional officer from participating in the CAB ruling on an incident where he was a witness to the incident. *Merritt,* 721 F.2d at 601. In *Redding,* the Court held that in some circumstances, prison official would be barred from serving on disciplinary boards if the prisoner being reported for misconduct has a pending legal action against those officials. *Redding,* 717 F.2d at 1113. None of those reasons apply in this case. The CAB members for Hoskins second hearing were all different from those who conducted his first hearing, and Hoskins has not provided any basis for his claim that these three CAB members were personally biased against him. According to the chairman, John Barnes, the second CAB independently assessed the evidence and determined the appropriate sanction based on the seriousness of the offense and the other reasons stated. Because Hoskins has failed to establish that the hearing officers had the kind of personal bias or animus against him necessary to show a constitutional violation, Hoskins petition for habeas corpus relief must be denied on this issue as well.

## IV. CONCLUSION

In summary, state prison inmates have certain established rights upon which this Court can intervene and grant relief from a state sentence. Those rights, as outlined in *Wolff v. McDonnell,* are notice of the charges against him at least 24 hours before the hearing, a limited opportunity to call witnesses and present documentary evidence in his defense, and a written statement of the evidence relied on and the reasons for the disciplinary action. In addition, he is entitled to an impartial decisionmaker, and a decision that is supported by some evidence in the record. The State has fulfilled all these requirements. Hoskins is entitled to no more.

Therefore, his petition for relief under 28 U.S.C. § 2254 must be **DENIED.**

**IT IS SO ORDERED**