**Juan CASTRO, Petitioner–Appellant,**

v.

**Suzanne HASTINGS,\* Respondent–Appellee.**

**No. 02–3713.**

United States Court of Appeals, Seventh Circuit.

---

\* Suzanne Hastings is substituted as appellee for her predessor Mike A. Ciolli. *See* Fed.

Submitted July 23, 2003.**

Decided July 23, 2003.

R.App. P. 43(c).

** After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Accordingly, Castro's

Before CUDAHY, POSNER, and RIPPLE, Circuit Judges.

## ORDER

Juan Castro, a prisoner at the Federal Correction Institution at Pekin, Illinois, brought this petition under 28 U.S.C. § 2241 claiming that his disciplinary hearing was not conducted in a manner consistent with due process. He alleged that the disciplinary hearing officer ("DHO") did not have sufficient evidence on which to convict him of insubordination and possession of a sharpened weapon. Castro's appeal of the DHO's decision was affirmed, first by the regional director and then by the national inmate appeals administrator. The district court determined that "some evidence" supported the DHO's decision, and denied Castro's § 2241 petition. Because we have concerns as to whether the DHO's decision was supported by "some evidence," we remand the case for further proceedings.

Castro shared a cell with two inmates, Moranchel and Hernandez. On October 15, 2001, a guard left two razors in the cell so that the inmates could shave. The record does not reflect which inmates took the razors. The same guard collected the razors some time later, but the blades had been removed and were never found. The guard wrote up separate incident reports on Castro, Moranchel, and Hernandez, respectively. In Castro's incident report, the guard did not name which inmate re-

motion for oral argument is denied and the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

turned the blade-less razors, but he did state that he ordered Castro to return the blades, and Castro replied that he never had a razor and did not know where the blades were. Disciplinary hearings were held and Moranchel and Castro were convicted of possessing a sharpened weapon; Hernandez was found not guilty. The DHO sentenced Castro to 45 days in disciplinary segregation.

After filing internal appeals that were unsuccessful, Castro filed this petition. The court did not address whether the punishment imposed on Castro implicated any liberty interest, and proceeded directly to examine the merits of Castro's due process claim. Relying on the October 15 incident report filed by the prison guard, the court concluded that "some evidence" existed to show that Castro possessed a sharpened weapon; the court therefore denied the petition.

In the prison disciplinary context, due process entitles an inmate to: (1) advance written notice of the claimed violation; (2) the opportunity to call witnesses and present documentary evidence, when consistent with institutional safety and correctional goals; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. *See Superintendent, Mass. Corr. Inst. v. Hill,* 472 U.S. 445, 454, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985); *Piggie v. McBride,* 277 F.3d 922, 924 (7th Cir.2002). In addition, the prison's judgment "does not comport with the minimum requirements of due process unless the findings of the prison disciplinary board are supported by some evidence in the record." *Hill,* 472 U.S. at 454, 105 S.Ct. 2768 (citation omitted).

Castro challenges the DHO's decision because he believes it was not based on some evidence. Castro argues that the DHO "erroneously found him guilty for possessing a weapon" when "[t]here was

no evidence to connect him with the missing razor." (Appellant's Br. at 6–7.) Castro elaborates that the record does not "reflect that the officer state [sic] that he gave Mr. Castro a razor," so "there is no evidence in the record that Mr. Castro ever possessed the razor." (*Id.* at 7.)

The "some evidence" standard requires a reviewing court to ask "whether there is *any* evidence in the record that could support the DHO's conclusion." *Henderson v. United States Parole Comm'n,* 13 F.3d 1073, 1077 (7th Cir.1994) (emphasis in original). Although "some evidence" is not a rigorous standard, "the evidence before the disciplinary board must point to the accused's guilt." *Hamilton v. O'Leary,* 976 F.2d 341, 346 (7th Cir.1992) (citation omitted). We review the denial of a § 2241 petition for clear error on factual issues and de novo on questions of law. *See Tezak v. United States,* 256 F.3d 702, 712 (7th Cir.2001).

■ The DHO's ruling here is problematic because there was no evidence that Castro personally handled a razor or that he had any role in returning one without a blade. The guard's report, which the DHO relied upon in finding Castro guilty, is written largely in passive voice and never identifies which inmates either received the razors or returned the razors without blades. Significantly, the guard's report never specified that Castro had any involvement with the razor blades:

> On 10–15–01 at 5:25 pm while picking-up razors from inmate Castro # 00746–627, Moranchel # 93197–079, and Hernandez # 07247–081, *I received 2 razors back that had the blades removed,* which can be used as a weapon. I gave inmate Castro # 00740–027 a direct order to give the blades back. Inmate Castro stated "I don't know what your [sic] talking about, I don't have your blades."

(Appellee's Dist. Ct. Br.App. at 9)(emphasis added). The DHO, however, character-

ized the report as representing that Castro gave the guard a razor without the blade. In his ruling, the DHO told Castro the guard had implicated him:

> based on the reporting staff's statement that on 10–15–01, at approximately 5:25 p.m., [the guard] was picking up razors from the cells in the Special Housing Unit. *He received a razor back from you with the blade removed.* He ordered you to give the blades back. You refused, stating that you did not know what he was talking about. You claimed you did not have the razor blades.

*Id.* at 12 (emphasis added).

The DHO's statement that Castro possessed a razor was accepted unquestioningly by the district court. In its order denying Castro's petition, the court stated: "Castro admitted that he had possession of the razor as evidenced by the fact that he handed the razor back to the guard." Contrary to the district court's assertion, however, the incident report does not state that Castro ever possessed the razor blades. Indeed no evidence at all in the record connects Castro personally to the razor blades. Without any documentation or testimony to show that connection, we are left to speculate how the DHO's decision was supported by "some evidence." Therefore, the district court denial of Castro's due process claim was improper.

■ Despite our conclusion that Castro did not receive the process that was due, he cannot succeed on his claim if he fails to establish a protected liberty interest. *Thielman v. Leean,* 282 F.3d 478, 482 (7th Cir.2002). A prisoner is entitled to due process only when the punishment imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). Thus, the penalties imposed upon Castro must qualify as "atypical" or "significant" hardships.

Castro claims without elaboration that he lost good-time credits when he was convicted by the DHO. Good-time credits reduce the number of days an inmate must spend in prison, and prisoners possess a liberty interest in freedom from punishment that will increase the duration of their sentences. *See Wolff v. McDonnell,* 418 U.S. 539, 557–58, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Montgomery v. Anderson,* 262 F.3d 641, 644–45 (7th Cir. 2001). Therefore, if Castro lost good-time credits as a result of the disciplinary proceedngs, he would have been deprived of a liberty interest.

However, it is not clear from the record whether Castro actually lost good-time credits. In his § 2241 petition, he requests in general terms that his good-time credits be restored. The DHO's report, however, listed Castro's punishment as only a sentence of 45 days in disciplinary segregation; it made no mention of good-time credits. The state argued to the district court that Castro had not lost good-time credits, but the court never addressed the issue. Based on the limited record before us, we cannot be certain that Castro did not lose good-time credits that would implicate a protected liberty interest. Given the fact-intensive nature of such an inquiry, this determination should be made by the district court in the first instance.

Thus, we REMAND this case to the district court for further proceedings to determine whether (1) Castro had good-time credits revoked and (2) to reconsider, in light of the factual inconsistencies we have highlighted in the record, whether the DHO's decision was based on "some evidence."