**Anthony R. FISHER, Petitioner–Appellant,**

v.

**John R. VANNATTA, Respondent–Appellee.**

No. 04–1064.

United States Court of Appeals, Seventh Circuit.

Submitted Aug. 31, 2004.*

Decided Sept. 1, 2004.

---

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is

Anthony R. Fisher, Miami Correctional Facility, Bunker Hill, IN, pro se.

Joby Jerrells, Office of the Attorney General, Indianapolis, IN, for Respondents–Appellees.

submitted on the briefs and the record. *See*

Before Hon. WILLIAM J. BAUER, Hon. FRANK H. EASTERBROOK, and Hon. ILANA DIAMOND ROVNER, Circuit Judges.

## ORDER

After receiving word that Indiana inmate Anthony Fisher had been talking to another inmate about escaping, prison investigator John George conducted several interviews to verify the allegations. Based on his investigation, George issued Fisher a conduct report charging him with "attempting or conspiring with another to escape." A conduct adjustment board ("CAB") found Fisher guilty and, as relevant here, sanctioned him with the loss of 90 days of earned good-time credits and a demotion in credit-earning class. After exhausting his state remedies, Fisher sought a writ of habeas corpus in federal district court under 28 U.S.C. § 2254. The court denied his petition, and Fisher appeals. We affirm.

George interviewed two inmates about Fisher's alleged escape plan. The first, a confidential informant, told George that he had overheard Fisher and another inmate talking about escaping. The informant said that he had seen Fisher timing the opening and closing of the prison gates when maintenance crews came and went, and that Fisher and the other inmate, who the informant identified as "a 'kid' being led by Fisher," had started an exercise program "to increase their stamina." The informant denied seeing any maps or notes documenting an escape plan, and explained that he was turning Fisher in so as to avoid being charged with conspiracy himself.

George then interviewed the inmate allegedly involved with Fisher in the escape plan, who told George that Fisher talked

Fed. R.App. P. 34(a)(2).

about escaping on a daily basis. He claimed that Fisher professed to have a handcuff key and said that he would escape if he could get to Porter County Jail. The inmate, whose identity has not been disclosed to Fisher, also said that he and Fisher had recently started a "weight-loss workout," and that Fisher avoided having visitors or listing relatives in his file so that prison officials would be unable to track him down if he escaped.

George had Fisher assigned to administrative segregation pending further investigation and searched Fisher's cell, where he recovered a "Motion for Fast and Speedy Trial" to be filed in Porter County and a poem, which reads:

Roses are red

violets are blue

I've escaped again

It's really no surprise

Maybe you'll have another chance

But I wouldn't hold my breath

waiting for the last dance

Where I lead you'll surely go

Just to see me get away

again and call you fat + slow

You'll be searching North, South

East and West too

I wish you luck

I really do.

George also interviewed Fisher, who denied ever having discussed escape with anyone. Fisher wrote George a letter shortly thereafter explaining that, "with a little old fashioned research and the right connections," he had uncovered the source of the "fabricate[d]" allegations against him. Fisher claimed to have learned that his accusers were his then-roommate, Royal Pearson, and Pearson's homosexual lover, themselves former roommates who allegedly wanted Fisher out of the way so that they could continue their relationship without being discovered. Unpersuaded, George filed his conduct report on December 13, 1998, relying on the results of his investigation and the fact that Fisher had previously been convicted of escape. The CAB held a hearing on December 18 and found Fisher guilty based on his poem, George's investigative report, and the statements from the two inmates whom George interviewed.

On appeal to the acting superintendent, E.C. Broyles, Fisher included two witness statements that he had not submitted to the CAB. The first witness claimed that Pearson had set up Fisher to retaliate against him for forging Pearson's name on slips requesting a new roommate. The second witness also claimed that Pearson had framed Fisher. Neither witness, however, mentioned the homosexual relationship Fisher claimed to have uncovered. Fisher also asserted on appeal that his poem was really a sort of "Dear Jane" letter to an ex-girlfriend, and that in it he was referring to "escaping" from the relationship, not prison. Broyles considered the witness statements that Fisher submitted and his explanation for the poem but declined to disturb the CAB's decision. Fisher appealed that decision to the final reviewing authority, C.A. Penfold, who also upheld the CAB's decision.

Fisher then filed his § 2254 petition in federal district court, claiming that his disciplinary conviction violated due process in several ways. Specifically, he asserted that there was insufficient evidence to sustain his conviction, that the two inmates whom George had interviewed were unreliable, and that he was denied the right to call witnesses and present exculpatory evidence. After reviewing the witness statements obtained by George and his sealed investigative report, the district court concluded that Fisher had received adequate process.

■ On appeal Fisher first reasserts that the evidence of his guilt falls below the minimum level due process demands. Indiana prisoners have a protected liberty interest in earned good-time credits and credit-earning class and are thus entitled to due process before either one is reduced. *See Wolff v. McDonnell,* 418 U.S. 539, 557–58, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Piggie v. McBride,* 277 F.3d 922, 924 (7th Cir.2002) (per curiam). To satisfy the demands of due process, the CAB's determination of guilt need only be supported by "some evidence in the record." *Superintendent, Mass. Corr. Inst., Walpole v. Hill,* 472 U.S. 445, 454, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985); *see also Webb v. Anderson,* 224 F.3d 649, 652 (7th Cir. 2000) (noting "lenient" evidentiary requirement).

The evidence against Fisher satisfied this "meager" level of proof. *See Webb,* 224 F.3d at 652 (quoting *Hill,* 472 U.S. at 457, 105 S.Ct. 2768). Although Fisher attempted to explain away the poem discussing escape as a break-up note to his ex-girlfriend, the CAB concluded that it signaled his intent to escape, a conclusion we do not reweigh now. *See Hill,* 472 U.S. at 455, 105 S.Ct. 2768. The poem, coupled with the information from his fellow inmates that Fisher was planning an escape and had taken steps toward carrying out that objective, provided "some evidence" of Fisher's guilt.

Fisher, however, maintains that the two inmates interviewed by George were unreliable, and that by relying on their statements the CAB violated his due process rights. Although a prison may keep investigation reports and informants' identities confidential for security and safety reasons, *Whitford v. Boglino,* 63 F.3d 527, 535 (7th Cir.1995) (per curiam), due process requires that confidential information bear sufficient indicia of reliability, *see, e.g., Rasheed–Bey v. Duckworth,* 969 F.2d 357, 361–62 (7th Cir.1992). Fisher maintains that the two inmates (whom he assumes are Pearson and his alleged lover) cannot be trusted because their accusations were really part of their plot to get Fisher out of his cell so that they could be reunited.

Fisher's theory does not undercut the reliability of the witnesses' statements, which were corroborated by the poem and the papers to be filed in Porter county recovered in his cell. *See Henderson v. United States Parole Comm'n,* 13 F.3d 1073, 1078 (7th Cir.1994) (reliability of confidential information may be established by corroborating evidence). Moreover, the district court reviewed George's confidential report in camera and concluded that the statements were sufficiently reliable, a conclusion we review for clear error. *See id.* We too have reviewed George's report and can see nothing clearly erroneous about the district court's conclusion that the statements, which also corroborate each other, bear sufficient indicia of reliability to satisfy due process.

■ Fisher next complains that his due process rights were violated when the CAB refused to grant him a continuance so that he could call several witnesses he claims would have testified that they had heard the confidential informants bragging about framing Fisher. Fisher, however, did not make his request until the day of his hearing. Although inmates have a due process right to call witnesses when doing so would be consistent with institutional safety and correctional goals, *see Wolff,* 418 U.S. at 566, 94 S.Ct. 2963, a request made the day of the hearing is too late, *Sweeney v. Parke,* 113 F.3d 716, 719–20 (7th Cir.1997), *overruled in part on other grounds by White v. Ind. Parole Bd.,* 266 F.3d 759, 765–66 (7th Cir.2001). Moreover, Fisher included his witnesses' statements with his administrative appeals, but

neither Broyles nor Penfold found them persuasive.

AFFIRMED.